## GRADY ET AL. *vs.* ROBINSON.

[BILL IN EQUITY TO OBTAIN DIVESTITURE OF LEGAL TITLE TO LAND, AND TO ENJOIN ACTION AT LAW FOR ITS RECOVERY.]

1. *What constitutes partner quoad third persons.*—On the formation of a partnership for the purpose of speculating in Indian lands, certain rules and regulations were adopted, at a meeting of the company, by which the number of shares was fixed, and his interest assigned to each partner; and by which it was required, that a specified sum should be paid on each share,—that relinquishments should be executed to the company, of all interests in any of the lands embraced in their contract; that any service should be performed for the company, in furtherance of its business, when called upon by a resolution of the company; and that a failure to comply with any of these requisitions, or any violation of good faith to the interest of the company, should forfeit to the company the interest of the person so offending: *Held,* that a person to whom an interest in the company was assigned at this meeting, and who assented within a reasonable time afterwards to take it, was liable as a partner, at least *quoad* third persons who afterwards dealt with the company, although he was not present at the meeting, did not pay the installment on the share assigned to him, did not execute the relinquishments, and did not perform any of the services required by the rules and regulations.

2. *Relinquishment by partner, without notice, no discharge of liability to third persons.*— A relinquishment by one ostensible partner to another, of all his interest in the partnership, does not discharge him from liability as a partner to third persons who afterwards deal with the company without notice of such relinquishment.

3. *Evasive answer, as to facts within personal knowledge, equivalent to admission.*— Where material facts are stated in the bill, which, *prima facie,* are within the knowledge, information, or belief of the defendant, his failure to deny them, or to express his belief of their falsity, or to state that he cannot form any belief respecting their truth, is a virtual admission that they are true. He cannot shelter himself behind equivocal, evasive, or doubtful terms, nor behind a literal denial which amounts to no more than a negative pregnant.

4. *Proof confined to facts in issue.*—The defendant cannot be permitted to prove, in bar of the relief sought by the bill, a fact which he failed to put in issue in his answer.

5. *Partner's authority to bind firm by sealed instrument.*—A sealed instrument, executed by one partner in the name of the firm, under a prior verbal authority, or subsequently verbally ratified, is binding on the firm.

APPEAL from the Chancery Court of Macon.

Heard before the Hon. JAMES B. CLARK.

This bill was filed by Alfred T. Grady, Joseph Moreland, Charlton Wright, and Phœbe Key, against Alexander J. Robinson, to obtain a divestiture of the legal title to a certain tract of land held by the defendant, and to enjoin an action at law for its recovery. The complainants claim to be sub-purchasers from R. J. Grigg and Adam Hardin, who bought from James C. Watson & Co.; and they allege that the defendant was a member of the firm of James C. Watson & Co., at the time of the purchase by Grigg and Hardin ; that he was bound as a partner, and under a special contract with said Hardin, to obtain a patent for said lands in the name of the company ; and that he fraudulently procured a patent in his own name, under which he has instituted an action at law for the recovery of the land. The firm of James C. Watson & Co. was formed for the purpose of speculating in Indian lands; and the bill alleges that, at the time they sold to said Grigg and Hardin, they held a claim on said land, by virtue of a contract made with the chiefs of the Creek Indians, known and generally called the "Big Contract." The contracts between the said James C. Watson & Co. and Grigg and Hardin, which are under seal, and dated December 27, 1842, are appended to the bill as exhibits A and C. The bill alleges that possession was taken under the contracts, the purchase money paid in full, and valuable improvements erected on the lands.

The defendant answered the bill, and the material parts of his answer are stated at length in the opinion.

The chancellor, on final hearing, on pleadings and proof, so modified the injunction as to allow the defendant to proceed with his action at law for the recovery of the possession of the land, but enjoined him from recovering any damages, and taxed him with the costs; and from this decree the complainants now appeal.

The action of the chancellor in suppressing certain portions of the depositions of Peter C. Harris and Littleberry Strange, is also assigned for error. The fourth and sixth direct interrogatories to these witnesses were as follows :

"*Int. 4th.*—Look upon said exhibits [A and C, attached to the bill], and state all you know that will tend to show that the agreements therein stated were entered into by said

Grady et al. v. Robinson.

J. C. Watson & Co. as therein set forth.  Do you know the handwriting in which the name of J. C. Watson & Co., appended to said exhibits, is written, from having seen the person who signed it write?  If yea, in whose handwriting is said name written, and what authority had the person who wrote the same to enter into the agreements contained therein in the name of J. C. Watson & Co.?"

"*Int. 6th.*—State all you know that will tend to show that unpatented lands, belonging to the persons composing said company, were, at the date of said exhibits, the subject of sale by said persons, in the name of J. C. Watson & Co., or that said agreements are not less binding on said persons than if executed by each and every one of them in his own proper handwriting."

The answers of said Harris were as follows:

"To the 4th interrogatory he answers, that he has examined said exhibits, and states that *James C. Watson was fully authorized to make such a contract;* that the ' James C. Watson & Co.' is in the handwriting of said James C. Watson; that he knows it is the signature of said Watson from having often seen him write."

"To the 6th interrogatory he answers, that *James C. Watson was fully authorized to sell all the lands embraced in the Watson contract.*"

The answers of said Strange were as follows:

"To the 4th interrogatory he answers, having examined the signature of J. C. Watson & Co. to said exhibits, that the signature thereto is in the handwriting of said James C. Watson; that he knows it from having seen him write frequently; that said Watson was trustee for said company of J. C. Watson & Co., *and had full authority to sell and convey the real estate belonging to said company.*"

"To the 6th interrogatory he says, that if James C. Watson had authority to sell any land, whether patented or not, other than the lands of said James C. Watson & Co., he does not know it, *but he had full authority to sell and convey any lands of said company, whether patented or not.*"

The chancellor, on motion of the defendant, suppressed the italicized portions of these answers, on the ground that the authority of said Watson was in writing, and could not be proved by parol.

All the other material facts of the case, as here presented, will be readily understood from the opinion.

JAS. E. BELSER, and GEO. W. GUNN, for the appellants:

1. The defendant's answer to the Collins bill is evidence against him, as also his admissions to the witnesses.—Brandon v. Cabiness, 10 Ala. 156; Julian v. Reynolds, 8 *ib.* 680; Holman v. Bank of Norfolk, 12 *ib.* 370; 9 Wheat. 831.

2. An equivocal answer is entitled to but little weight, especially when it is contradicted by other writings and statements of the defendant.—Gamble v. Johnson, 9 Mo. 598.

3. The evidence establishes the fact that the defendant was a partner in the firm of James C. Watson &. Co., and the complainants have an undoubted right to treat him as such. His answer to the Collins bill contains his own admission of the fact, and no public notice was ever given of his withdrawal.—6 Porter, 138; 2 Ala. 502; 5 *ib.* 173; 10 *ib.* 156; 12 Sm. & Mar. 538; 4 Shep. 261; 2 Watts & S. 411; 7 Miss. 414; 7 Blackf. 170; 12 Vermont, 291.

4. The functions, rights and duties of partners comprehend those of trustees and agents.—Collyer on Partnership, §§ 182 to 186. A partner cannot undertake incompatible duties, nor become an actor in a transaction to the prejudice of one dealing with the partnership, nor acquire a title adverse to the partnership vendees.—McGehee v. Lindsay, 6 Ala. 16; Crutchfield v. Haynes, 14 Ala. 52; Story on Agency, § 217.

5. If the defendant was not a partner, and did not obtain the patent as the agent of Hardin, still his conduct and declarations induced Hardin and his vendees to believe that he was acting for them; he is estopped, therefore, from setting up a purchase in his own name, which enures to their benefit. 20 Conn. 563; 14 Penn. State R. 343; 7 Blackf. 170; 10 Ala. 400; 22 *ib.* 543.

6. The allegations of the bill, as to the fraud in procuring a patent, are abundantly proved.—Kennedy v. Kennedy, 2 Ala. 577; Bishop v. Bishop, 13 *ib.* 475; 10 *ib.* 156.

7. Purchasers for valuable consideration, without notice of a prior equity, are entitled to pay for improvements made. Patrick v. Marshall, 2 Bibb, 45; Woods v. Patrick, 3 *ib.* 20; 3 Litt. 399; 1 A. K. Mar. 246, 389; 3 Dana, 245; 6 Mon.

557; 4 J. J. Mar. 170; Goodwin v. Lyon, 4 Porter, 297; 3 Paige, 545; 1 Story, 478; 13 Ala. 43; 4 Gill, 87; 4 Litt. 370; 1 Johns. Ch. 344.

CLOPTON & LIGON, *contra*, contended,—

1. That the defendant was not a member of the firm of James C. Watson & Co., at the time of the sale to Grigg and Hardin. He was not present at the formation of the company, and was not one of the contracting parties. He was not present at the meeting in August, 1837, when a half share was assigned to him by the original contractors; and hence he did not thereby become a member, unless said share was afterwards accepted by him, either in writing, or by some act. After said half share was assigned to him, his membership in the company depended upon certain conditions; one of which conditions was the payment of $6,000 on each full share, and the like proportion on each part of a share, within twenty days from the time of said meeting; and also certain other duties required by the seventh resolution of the company. None of these conditions was ever complied with by the defendant. He denies that he was a member; and there is no proof of any act done by him binding him by the resolutions of the company. His admission, in his answer to the Collins bill, that he was a member, cannot estop him in this case. That admission may (and indeed must) have been made in consequence of wrong advice as to his rights and liabilities in relation to the company; and such an admission cannot estop him, unless the complainants acted upon it, or were misled by it.—Gamble v. Gamble, 11 Ala. 976. That question is now directly put in issue; and the evidence fully shows that he was not a partner, either in law or in fact. He could not be a member of a company for speculating in lands, except by some instrument in writing signed by himself, or by his duly authorized agent.—Collyer on Partnership, 3, note 2; Larkins v. Rhodes, 5 Porter, 195; Duren v. Parsons, *ib*. 345.

The answer states, in explicit language, " that, at the time said contracts of purchase with Jas. C. Watson & Co. are alleged to have been made, this defendant was not a member of said company." This plain and positive denial is directly

responsive to the allegation of the bill. The statement of facts which is afterwards inserted in the answer, is a mere relation of the organization of the company. The simple denial, of itself, would have been sufficient; but the statement of the additional facts cannot subject the answer to the charge of evasiveness and vagueness. If, however, the answer were obnoxious to this charge, the complainants should have excepted to it for that reason; but they cannot construe it into an admission of the allegations of the bill, in face of the general and positive denial.—Whitney v. Belden, 3 Edw. 386.

2. But, if the court should hold the defendant a partner in the company, then we contend that the company was not bound by the contracts of Grigg and Hardin. These contracts were made by James C. Watson, who had no authority to sell any lands, except as he was authorized in writing: his only authority was to sell the lands patented.—12 Ala. 580; Story on Partnership, §§ 101, 168; Collyer on Partnership, § 1137.

3. If the defendant was a partner at all, he was only a dormant partner, whose liability does not extend to speculations in the purchase and sale of lands.—Collyer, 3, note 4; Story, § 83; 4 Mass. 424; 3 Sumner, 435.

4. The complainants, having purchased with a knowledge of the defects in their titles, are not entitled to pay for their improvements.—2 Story's Equity, §1238; Lamar v. Minter, 13 Ala. 40; Hanrick v. Herbert, 16 ib. 581; 8 Wheat. 82; 4 Cowen, 168.

RICE, J.—Individuals who would not be held partners *inter sese*, may become liable as partners *quoad* third persons. Hesketh v. Blanchard, 4 East, 144; Hazard v. Hazard, 1 Story's C. C. Rep. 371; Story on Partn. § 60; Collyer on Partn. §§ 78–86.

The first question for consideration in the present case, is, whether, upon what appears in the record, the complainants have the right to treat the defendant as a partner in the company of James C. Watson & Co.

The bill states, among other things, that said company was formed "for the purpose of speculating in Indian lands, which were to be disposed of by the government of the

United States, under the treaty made by the said government with the Creek Indians in 1832"; that on the 27th December, 1842, the time when the agreements shown in exhibits A and C, attached to the bill, were executed, said company was composed of James C. Watson, *Alexander J. Robinson, the defendant*, and a number of other persons whose names are stated; that at the time said agreements were executed, the *said Robinson* "was a member of said trading firm", and "was bound by his connection with the said company, and *by the said agreements*, made by the said company with the said Grigg and Hardin, whenever a patent was obtained for the lands" mentioned in said agreements, " to aid said company in carrying out the conditional contracts therein set forth", &c., &c.; that the said Hardin, for the benefit of complainants, agreed with the defendant, that he "should actively engage himself in obtaining a patent from the government of the United States to James C. Watson & Co., for the lands mentioned in exhibits A and C, for which service he, the said Hardin, was to pay said Alexander J. Robinson the sum of fifty dollars."

The defendant, in his answer, " admits that the said James C. Watson & .Co. was a company formed for the purposes alleged in said bill", but " denies that, *at the time* said contracts of purchase with James C. Watson & Co. are alleged to have been made, this defendant was a member of said company; *and for answer states the following facts, upon information and belief:* On the 28th August, 1836, a contract of purchase was made and entered into by James C. Watson, Edward Hanrick, Peter C. Harris, John Peabody, and William Walker, on the one part, and certain chiefs of the Creek Indians, aided by Gen. Jessup, for the purchase of certain lands known as reverse contracts, in what was called Dr. McHenry's District, for the sum of seventy-five thousand dollars. On the 28th day of April, 1837, the said James C. Watson, Edward Hanrick, Peter C. Harris, John Peabody, and Wm. Walker, by his executor, Edward Hanrick, held a meeting at Columbus, Georgia, and adopted rules and regulations for said company ; at which Alfred Iverson was admitted as an original contractor, and was present. The fourth, fifth, seventh and eighth of said rules and regulations are as follows : '4th.

The shares of said company shall be twenty, to be divided and assigned as follows, viz.: James C. Watson, Edward Hanrick, John Peabody, Peter C. Harris, Alfred Iverson, and William Walker's estate, shall each have one full share; Joseph Fitzpatrick, Dozier Thornton, jr., Nat Macon Thornton, Thomas S. Woodward, John A. Hudson, Columbus Mills, Luther Blake, Daniel McDougald, Edward Carey, *Alexander J. Robinson*, John & N. F. Collins, L. B. Strange, John J. McCrary, George Stone, and William Vann, shall have each one-half share; James Wadsworth and Paddy Carr shall have one-fourth of a full share; and the remaining four and a half shares shall be reserved for future distribution and appointments by the company.' '5th. The sum of six thousand dollars upon each full share, and the like proportion for each part of one, shall be paid, within twenty days from this date, to the treasurer, who is authorized to give receipts for the same.' '7th. The persons heretofore designated as shareholders, and any others that may be hereafter admitted, shall be compelled to pay promptly all installments or sums which which may be voted by the company, and shall also make and execute relinquishments to the company, of all interest, right, title, or claim, in and to any land which has been or may be embraced in said contract; and further, it shall be the duty of every shareholder to do and perform any service in the furtherance and completion of the business of the company, for which they may be called upon by a resolution of the company. And that, upon failure to comply with the requisitions aforesaid, or upon any violation of good faith to the interest of the company, the claim or above interest of such person shall be held and claimed as forfeited to the company.' '8th. The control of the company, or the adoption of all rules or regulations, and other business of the company, shall be holden exclusively in the hands of the original contracting parties and Alfred Iverson, who is hereby admitted as an original contractor.' *This defendant understood that he was to have and be entitled to one half share.* But this defendant states, further, that he was not present at said meeting held in Columbus on the 28th April, 1837, has never paid any thing by way of installment, or otherwise, into the treasury of said company, has never paid any thing

upon said half share, and has never received any thing from said company as a co-partner, or on account of said half share. This defendant was, at one time, *the agent of said company*, in paying off the Indians and *closing said contract*, and received compensation for *his services as said agent;* but has never received any thing from said company in any other capacity. This defendant, further answering, states that, previous to the year 1842, and to the execution of said agreements with the said Grigg and Hardin, and, as well as this defendant now recollects, *in the year* 1839, *this defendant relinquished in writing all the interest which he then had* in said James C. Watson & Co. to the said *James C. Watson*, and without any consideration being paid to this defendant by the said James C. Watson. This defendant, further answering, saith, that he denies that at any time the said Adam Hardin, *for the benefit of complainants*, agreed with this defendant that this defendant should actively engage himself in obtaining a patent from the government of the United States to James C. Watson & Co., for said land mentioned in exhibits A and C, and for which service the said Hardin was to pay this defendant the sum of fifty dollars. This defendant states that, on the contrary, in the latter part of the year 1844, and *before any of the complainants* had acquired any interest in said lands, the said Hardin called to see this defendant, at his residence in Columbus, Georgia, where he was confined by sickness, stated to this defendant his purchase of said lands, and asked the assistance of this defendant to procure a patent for the same. This defendant expressed a willingness to said Hardin to assist him, and offered to do any thing he could to assist him. The said Hardin probably said that he would pay fifty dollars to procure a patent, but this defendant denies that he ever agreed to accept said sum, and referred the said Hardin to Alfred Iverson as a competent and proper person to procure said patent."

The defendant does not pretend that he was, at any time, a *dormant* partner. He makes no defence of that kind, nor does he plead or rely on the statute of frauds. If, therefore, his answer, when construed according to established rules, in connection with the bill, amounts virtually to an admission, either that the half share assigned to him by the aforesaid

20

rules and regulations adopted by the original partners on the 28th April, 1837, was thus assigned to him according to his previous request, or that within a reasonable time after it was thus assigned he assented to take it as so assigned to him, he thereupon became a partner in said company, at least as to third persons who afterwards dealt with the company, although he was not present when said rules and regulations were adopted, and although he has never paid nor received any thing on account of said half share. An agreement to take and pay for the fixed half share in the partnership, assigned to him as aforesaid, in accordance with the provisions of said rules and regulations, would amount to a contract of partnership, and make him a partner, at least as to third persons afterwards dealing with the company. The provision, that the shareholders should pay promptly all installments or sums voted by the company, and execute such relinquishments as are specified in the seventh of said regulations, and perform such service as therein mentioned, has neither the form nor force of a condition precedent, or of a limitation of time, at which the contract of partnership should take effect between the original partners and the several persons who are " designated as shareholders " in said rules, and who in any manner agreed to take the shares or fractions of shares as assigned to them respectively by said regulations. The failure to pay the installments, or to execute the relinquishments, or to perform the services as provided for therein, might have given to the company the privilege or election to claim the share or interest of the partner so in default, " as forfeited to the company"; but the company was not bound to assert such claim, and it is not pretended that it has done so, either as to the defendant or any other designated shareholder.—Goddard v. Pratt, 16 Pick. Rep. 412; Herbert v. Hanrick, 16 Ala. R. 581; Patterson v. Ware, 10 ib. 444; Collyer on Partn. §§ 86, 467.

The defendant does not, in his answer, say that he was not a partner in said company *at some period prior to the 27th December*, 1842, the time when the agreements with Grigg and Hardin were made. He does not even venture a plain and positive denial of the allegation that he *was at that time* a partner. His seeming denial of that allegation is carefully

Grady et al. v. Robinson.

linked with a statement of "facts", which destroy its force
as a real denial. Among the "facts" thus stated in his
answer, is, that the "*defendant understood that he was to have
and be entitled to one half share*", and that by the rules and
regulations adopted by the original partners "one half share"
was assigned to him! True, he asserts "he was *not present*"
at the meeting by which these rules and regulations were
adopted, although his answer shows it was held in the city
where he resided. True, he asserts that he never paid or
received any thing on account of said half share. And there
is an elaboration in his assertions upon this point, which con-
trasts strikingly with his unbroken silence upon other points
fully as important, and fully as much within his knowledge
or belief. Although he says "he was not *present* at said
meeting"; yet he does not say he was ignorant of its proceed-
ings, even whilst they were going on: Although he says he
did not pay or receive any thing on account of said one half
share; yet he does not say he did not authorize, assent to,
and ratify the proceedings of said meeting whereby said one
half share was assigned to him. Although he says that, in
1839, he relinquished in writing, without any consideration,
all the interest which "*he then had* in said James C. Watson
& Co." (not to the company, but) to James C. Watson; yet
he does not say it was some interest other than the said "one
half share", nor does he explain why he relinquished his in-
terest in a company owning so large a quantity of land,
without any consideration. Although he says he "under-
stood he *was to have and be entitled* to one half share", he does
not tell why, nor when, this understanding had its origin,
nor does he say that he objected to having the one half share
assigned to him, or that he had never sanctioned the setting
apart of that half share to him.

If in his answer he had contented himself with a plain
denial that he was a partner on the 27th December, 1842, it
may be conceded that the complainants would then have
been bound to overcome that denial by the testimony of two
witnesses, or of one witness and some circumstance of cor-
roboration. But the "facts" with which he has accompanied
and linked his seeming denial, and upon which he has evi-
dently based it, not only deprive it of all force as a real

denial, but amount virtually to an admission, that from April, 1837, until his relinquishment to James C. Watson in 1839, he was a partner in said company, and that he still continues to be responsible as such partner, unless the legal effect of his said relinquishment to Watson terminated his connection with the company as one of the partners and his responsibilities as such partner.

We are constrained to put this construction on this answer, by well-settled rules. Where material matters are stated in the bill, which, *prima facie*, are within the knowledge, information, or belief of the defendant, if in his answer he fails to deny them, or to express his belief of their falsity, and does not state that he cannot form any belief respecting their truth, they must be considered as admitted, without any order taking them for confessed.—McClain v. Waters, 9 Dana, 55; Bailey v. Wilson, 1 Dev. and Batt. Eq. Rep. 187. A vague manner of denial of such matters, is always received unfavorably. A defendant is not at liberty thus to put in issue allegations, which he may *know*, or fully *believe*, to be true. If he expresses himself obscurely, and leaves to the court the task of divining his meaning, the court adopts that construction of his language which is strongest against him. He cannot be allowed to shelter himself behind equivocal, evasive, or doubtful terms, and thus mislead the complainant; nor behind a literal denial which amounts to no more than a negative pregnant, or an evasion of the point of substance.— Hill v. Lackey, 9 Dana, 83; McClain v. Waters, and Bailey v. Wilson, *supra;* Brooks v. Byam, 1 Story's Rep. 296; Deveraux v. Cooper, 11 Vermont Rep. 104; Morris v. Parker, 3 Johns. Ch. Rep. 297; Smith v. Lasher, 5 Johns. Ch. Rep. 247; Talbot v. Sebree, 1 Dana, 56; Story's Eq. Pl. §§ 854, 855; Bissel v. Bozman, 2 Dev. Eq. Rep. 163. Particular charges must be answered particularly and precisely. A general answer, even when it includes an answer to all the particular charges, is insufficient.—Wharton v. Wharton, 2 Sim. & Stuart, 235.

As the answer does not pretend that the defendant was a *dormant* partner, nor that notice of any dissolution of the partnership was ever given, we hold it to be clear, that no dissolution of the partnership was effected by the relinquish-

ment made in 1839, by the defendant to Watson, as it respects third persons who had no notice of such relinquishment; and that the partnership continued after such relinquishment as before, as it respects all such third persons.— Lucas v. Bank of Darien, 2 Stew. Rep. 280; Mauldin v. Br. B'k at Mobile, 2 Ala. 502; Goddard v. Pratt, 16 Pick. R. 412.

Our opinion is, that from a proper construction of the bill and answer, the fair conclusion is, that the complainants have the right to treat the defendant as a partner in said company, and to hold him to the responsibilities of such partner.

The bill states (among other things), " that at the time the said agreements A and C were entered into between the said company and the said Grigg and Hardin, the said company held a claim on the said lands mentioned in said exhibits A and C, by virtue of a contract made with the chiefs of the said Creek Indians, known and generally called the Big Contract"; * * * " that because of said agreements, the said company, under the circumstances, were bound in equity to obtain, if they could, with reasonable diligence, a patent for the lands named in said agreements, and to so arrange it that the same should enure to the benefit of your orators and oratrix, sub-purchasers under the said Grigg and Hardin as aforesaid." The bill also states, that the defendant procured the patent to be issued to himself, and that he has sued the complainants for the lands.

The defendant, in his answer, admits " that it may be true that, by virtue of the 'Big Contract', the said James C. Watson & Co. had a claim upon said lands mentioned in said exhibits A and C; but this defendant, not having access to a list of the lands embraced in the said 'Big Contract', cannot now remember whether the said lands mentioned in said exhibits A and C are included in said list or not, and therefore cannot state what claim, if any, the said James C. Watson & Co. held upon said lands at the time the said agreements were entered into. This defendant's best recollection, however, is, that the said James C. Watson & Co. did, at one time, assert a claim to said lands, but that said claim was never established and approved, as required by the treaty of 1832."

There is nothing else in the answer which amounts even to

an intimation, that the lands mentioned in exhibits A and C were not embraced in the 'Big Contract'; and the question is, whether the part of the answer last above copied puts the plaintiffs upon proof that said lands were embraced in that contract.

We must bear in mind, that we have already ascertained that the defendant must be regarded as a partner in said company, for all the purposes of this case. Regarding him as a partner, it must be presumed, in the absence of his statement to the contrary, that he had *a belief* either that the said lands were included in the 'Big Contract', or that they were not included therein; and that, if he had made any attempt to obtain access to the list of the lands embraced in the 'Big Contract', referred to in his answer, he could have obtained such access. He does not say that he has made any attempt to obtain such access, nor does he say that he does not *believe* the lands in controversy were not embraced by the 'Big Contract.' He says " it may be true" they were embraced in it, but, "*not having* access to a list of the lands embraced" in it, " he cannot *now remember*" whether they were " included *in said list* or not, and *therefore* cannot state what claim, if any", the company held on said lands. His best recollection, however, is, that the company did, at one time, assert a claim to said lands; and he seems careful not to say that the company ever asserted any claim other than under the 'Big Contract.' It was his duty, as a partner, to examine the list alluded to, before answering, or, at least, to have attempted to obtain access to it; and, if he failed to obtain it, to state the failure in his answer.—Earl of Glengall v. Frazer, 2 Hare, 99; Story's Eq. Pl. § 855 a. It was his duty, if he did not *believe* the said lands were included in the 'Big Contract', to say he he did not *believe* they were included in it. He has not done so; and we feel bound to interpret his answer, in this respect, as an admission on his part that he did not mean to put in issue, as a matter of controversy in this cause, whether said company claimed said lands under the 'Big Contract', nor to ask for proof of the truth of the allegation of the bill, that the company, at the time the agreements A and C were executed, claimed said lands under the 'Big Contract.'—Brooks v. Byam, 1 Story's Rep. 296; Story's Eq. Pl. § 868 b, note 2.

Under the bill and answer, as we understand them, the defendant cannot be permitted to prove, in bar of the relief sought by complainants, that the lands in controversy were not in fact embraced in the 'Big Contract;' because in his answer he has failed to set up such defence, or to put such matter in issue, and has also failed to deny that the company, at the time the agreements show in exhibits A and C were executed, claimed the lands under the 'Big Contract', and by such claim induced Grigg and Hardin to enter into those agreements.—McFerren v. Taylor, 3 Cranch, 270.

Upon the case as presented by the bill and answer, the defendant must be regarded as a partner in said company at the time the agreements A and C attached as exhibits to the bill were made, and the lands mentioned in said agreements must be regarded as embraced in the 'Big Contract.'

The defendant attaches, as exhibit A to his answer, a copy of an agreement executed on the 20th January, 1840, by the original partners in said company, appointing James C. Watson trustee for said company, and conferring upon him certain authority as therein shown; and thereupon the defendant states, that he " is *advised and believes* that the said James C. Watson had no power and authority to sell, dispose of, or convey any land, so as to bind the members of said company, except those lands which might be *patented to the said James C. Watson & Co.*, or *to the said James C. Watson as trustee of said company;* and that the contracts of purchase made with the said Grigg and Hardin are not binding upon the members of said company;" and " that the said James C. Watson was not authorized to sell the land specified in said agreements" A and C attached to the bill.

It is unnecessary now to decide, whether or not, in this particular, the defendant was correctly "advised", or whether his belief, founded on such advice, is correct. For, conceding that *the agreement of the 20th January,* 1840, did not authorize Watson to sell the lands in controversy, nor any land, until a patent for it had issued, nor to enter into the agreements with Grigg and Hardin shown in exhibits A and C attached to the bill; yet, as the defendant is to be treated as a partner in said company, and the lands in controversy are to be treated as embraced in the 'Big Contract', and as

Watson entered into said agreements A and C attached to the bill in the name of the company, and signed the firm name to them, it is sufficient to establish those agreements as the agreements of the company, and binding upon it as such, to prove that Watson had a prior *verbal* authority to execute them, or that they had been subsequently *verbally* ratified by the members of the company.—Herbert v. Hanrick, 16 Ala. Rep. 581; Worrall v. Mann, 1 Selden's Rep. 240; Collyer on Partn. § 467. The legal and unexceptionable evidence in the cause-convinces us that he had such prior verbal authority, and that there has been such subsequent verbal ratification.

There is no ground for suppressing the depositions of Peter C. Harris and Littleberry Strange. The exception taken by defendant to the answers of said Harris and Strange, to the 4th and 6th direct interrogatories, is founded on the assumption that Watson had no authority except such as was in writing, and shown in the agreement of the 20th January, 1840. This assumption is not proved nor warranted by the evidence. And, as a previous *verbal* authority was sufficient, it certainly was competent for the complainants to prove by Harris and Strange, who were partners in said company, that Watson had authority to enter into the agreements on which complainants rely. The chancellor erred in sustaining the exceptions relating to these answers of Harris and Strange.

We have now noticed what we consider the most material questions decided by the chancellor; and as to them we think he has erred. We will not extend this opinion by noticing the other questions decided by him; but, out of abundant caution, shall leave them as open if they had not been decided at all. For the errors committed on the points hereinabove considered, and on which the conclusions of the chancellor are in conflict with those above expressed by us, his decree is reversed, and the cause remanded, at the costs of the appellee.