**LARSON v. IVES DAIRY CO., Inc.**
**IVES DAIRY CO., Inc., v. LARSON.**
**FAHS v. IVES DAIRY CO., Inc.**
**IVES DAIRY CO., Inc., v. FAHS.**

**No. 11453.**

Circuit Court of Appeals, Fifth Circuit.

April 26, 1946.

Robert R. Reynolds, Jr., and A. F. Prescott, Sp. Assts. to Atty. Gen., Sewall Key, Acting Asst. Atty. Gen., and H. S. Phillips, U. S. Atty., of Tampa, Fla., for appellants.

Hope Root, of Miami, Fla., for taxpayer.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

Ives Dairy Company, Inc., paid social security taxes for 1938 and 1939 in respect of employees connected with its milk and cream sales; and, on the ground that the employment was "agricultural labor"

excepted from the tax, 42 U.S.C.A. § 1107, sought refund in vain, and then sued the respective Collectors. The cases were tried together before the judge, who held that the services of the milk-room employees, the drivers of delivery trucks and their helpers were agricultural labor, but those of office help and of a sales solicitor were not; and recovery was allowed of the taxes paid in respect of the former, and denied in respect of the latter. Both the Collectors and the Dairy Company have appealed.

There is no controversy about the facts, in brief these: The Company owned a farm of 800 acres near Miami, Florida, and leased 100 acres adjacent, whereon it operated a dairy business, having a herd of about 700 head of cattle, buildings for processing and bottling the milk, cottages for its employees, an office, and necessary machinery, and trucks for delivery to consumer customers in the Miami area. During the tourist season it bought some milk and cream to supplement its own—about 13% of its gross sales being of that so purchased. The milk and·cream sold was pasteurized on the premises and bottled, a simple mechanical process commonly practiced by dairy farms. The truck drivers delivered the bottled milk and cream and collected for it. When not so engaged they did other work about the dairy. The office force did only clerical work in keeping records and accounts of the operations of the business. The sales solicitor did nothing on the premises, but went about soliciting new customers. All the employees were paid stated wages.

 The original Social Security Act did not define the term "agricultural labor". The definition supplied in the Act of Aug. 10, 1939, 53 Stat. 1392, Sec. 614, 26 U.S. C.A. Int.Rev.Code, § 1607, was expressly made effective Jan. 1, 1940, and throws no light on what the words meant before that date. Chester C. Fosgate Co. v. United States, 5 Cir., 125 F.2d 775. But the original Act provided that the Commissioner of Internal Revenue and Secretary of the Treasury should make regulations (42 U.S.C.A. § 1108), and the regulation made, which continued in effect till Jan. 1, 1940, explained quite fully how the words "agricultural labor" should be understood. It is set out at the bottom of page 777 of 125 F.2d in the Fosgate Co. case. It specifically states that farm labor is intended, and that dairy farms are included.

It states further that not only the cultivation of the soil, the harvesting of crops, and the raising, feeding and management of livestock are covered, but also "the processing of articles from materials which were produced on a farm; [and] the packing, packaging, transportation, or marketing of those materials or articles", but only if performed by an employee of the owner or tenant of the farm where produced, and if done as "an incident to ordinary farming operations as distinguished from manufacturing or commercial operations." For the reasons stated in the Fosgate Company case we think this regulation ought to be carefully followed as expressing the will of Congress. In that case we found some of the employees who did certain work were doing it as incidental to agriculture, while others doing the same kind of work were carrying on a commercial operation. Here, however, there is but a single enterprise, and that a dairy farm. The purchase of some milk to supply customers in a season of great demand, which apparently was mingled with the milk produced, does not we think suffice to turn it into a commercial business. The size of the farm, of course, does not matter—it is still a dairy farm. Nor does the fact that the producer elects to sell the product direct to consumers instead of to some middleman. Farmers have as often as not so sold their vegetables, eggs, chickens, milk, and the like when they were in reach of a consumers' market and had the facilities to do it. By the quoted terms of the regulation those employees who processed and packaged and transported the milk and cream to market were doing agricultural labor.

 On the other hand the ·clerical workers, and the sales solicitor were not. It is true that what they did a small farmer might have done himself, but here the size of the business has created a class of specialized employees who do no manual labor, but are of a professional type, having aptitudes quite apart from farm work. It does not seem at all reasonable to call their work agricultural labor, nor does what they do fall under any words of the regulation.

A like result on both points was reached in the Tenth Circuit in Jones v. Gaylord Guernsey Farms, 10 Cir., 128 F.2d 1008.

The judgments on all appeals are affirmed.