**NATIONAL LABOR RELATIONS BOARD
v. JOHN W. CAMPBELL, Inc.
No. 11255.**

Circuit Court of Appeals, Fifth Circuit.
Jan. 2, 1947.

A. Norman Somers, Asst. Gen. Counsel, and Owsley Vose, Principal Atty., N.L.R.B., both of Washington, D. C., and LeRoy Marceau, Regional Atty., N.L.R.B., of New Orleans, La., for petitioner.

B. E. Henricks, of Miami, Fla., for respondent.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

Three women employees of the Respondent, according to the overwhelming weight of the evidence, failed properly to grade tomatoes in the packing plant of the Respondent and for that reason, and the further reason that they threatened two employees with the loss of their jobs if and when the plant became unionized, were discharged. We are now asked by the National Labor Relations Board to enforce its order that they be offered full reinstatement with back pay and that appropriate notices be posted.

It is necessary to ascertain first, whether or not these employees were agricultural laborers and, therefore, exempt from the provisions of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. If so, it will not be necessary to determine whether or not there is any substantial evidence to support the finding of the Board that these women were discharged for union activities.

Respondent is extensively engaged in growing tomatoes on a farm of approximately 1,000 acres near Goulds, Florida, and as an adjunct to which it operates its own packing house wherein the products of its farm are washed, graded, and packed for market.

The growing and packing of tomatoes is seasonal. They are highly perishable, admitting of little delay in gathering, packing, shipping, and marketing. It is essential to the shipper that they not only be promptly packed and marketed but that they be correctly graded so as to prevent the inclusion of worm-eaten, over-ripe, defective tomatoes in shipments, a small percentage of which might cause an entire shipment to be either rejected, classed as of inferior grade, or to be the subject matter of dispute and dissatisfaction.

With the exception of a short while at the end of the packing season in 1944, the Respondent never has engaged in the packing of any agricultural products except those grown on its own farm. The discharge of the three employees took place in February, 1944, at a time when they were engaged in the grading only of tomatoes grown on Respondent's farm. Neither of them was ever engaged in grading or otherwise working on any agricultural products except those grown by the Respondent. After having concluded the packing of its crop in the early part of 1944, Respondent, upon the insistence of the United States, and in order to save, preserve, and conserve foodstuffs necessary to the prosecution of the war, continued, for the remainder of that season, to utilize its facilities and employees in packing tomatoes for others, with the result that approximately twenty per cent. of its total pack for that year came from other growers. This appears to be without significance, however, because the discharged employees were not at any time engaged in working on agricultural products grown by other than Respondent.

Agricultural laborers are excluded from the provisions of the National Labor Relations Act, and it is necessary for us to inquire into the character of the operation of the Respondent at the time of the discharge of the three employees. If the employees were engaged in agricultural labor within the exception in the National Labor Relations Act, then the National Labor Relations Board would be without jurisdiction to make the order which is here sought to be enforced.

Subsection (3) of Section 152, Title 29 U.S.C.A., the Wagner Act, provides that "the term 'employee' * * * shall not include any individual employed as an agricultural laborer." The Act was passed July 5, 1935. On August 14, 1935, or forty days later, and during the same session of Congress, the Social Security Act was passed, which also exempted agricultural labor from its provisions. Sec. 1107, Title 42 U.S.C.A. Pursuant to the authority of the latter statute, Regulation 90 was promulgated, and Article 206(1) thereof undertook to define agricultural labor.[1]

---

[1] Art. 206 (1) Agricultural labor.—The term "agricultural labor" includes all services performed—

(a) By an employee, on a farm, in connection with the cultivation of the soil, the harvesting of crops, or the raising,

On the 10th of August, 1939, Congress amended the Social Security Act by providing that the term "agricultural labor" See Sec. 1607, Title 26 U.S.C.A. Int.Rev. Code, subsection (*l*) (4) should include:

"(4) In handling, planting, drying, packing, packaging, processing, freezing, grading, storing, or delivering to storage or to market or to a carrier for transportation to market, any agricultural or horticultural commodity; but only if such service is performed as an incident to ordinary farming operations or, in the case of fruits and vegetables, as an incident to the preparation of such fruits or vegetables for market. The provisions of this paragraph shall not be deemed to be applicable with respect to service performed in connection with commercial canning or commercial freezing or in connection with any agricultural or horticultural commodity after its delivery to a terminal market for distribution for consumption."

■ We recognize that the definition in the Social Security Act is not a binding definition of "agricultural labor" in the National Labor Relations Act, but in view of the fact that the two Acts were enacted so close together in point of time, we doubt that we would be going far afield in assuming that what Congress thought was agricultural labor on July 5 it probably thought was agricultural labor on August 14, and in assuming furthermore that the purposes that Congress had in making the exemptions of agricultural laborers in both Acts were substantially identical.

It does not take a long memory to recall that in the midst of the depression of 1935, and for a time before and since, the farmer was the object of the deepest solicitude by Congress. It furnished abundant evidence that it believed that no class of citizens of the country was in greater need of Congressional aid than the farmer. Legislation was enacted by which farmers were paid: for plowing up every third row of certain crops; for killing pigs; for adjustments, loans, parities, and moratoriums.

The Fair Labor Standards Act was enacted June 25, 1938, and it likewise exempted, Sec. 213, Title 29 U.S.C.A., any employee within the area of production engaged "in handling, packing, storing, ginning, compressing, pasteurizing, drying, preparing in their raw or natural state, or canning of agricultural or horticultural commodities for market." [2]

■ These enactments clearly demonstrate that it was the intent of Congress to relieve farmers from the burdens and obligations which each of those three Acts imposed on other types of American activity and enterprise. It would seem therefore, that definitions by Congress in the Social Security Act, the Fair Labor Standards Act, as well as decisions of the Court defining "agricultural labor" under either of those Acts, should have much persuasiveness in any attempt to define the term under the National Labor Relations Act.

With this in mind we shall consider some of those definitions. In Chester C. Fosgate Co. v. United States, 5 Cir., 125 F.2d

---

feeding, or management of live stock, bees, and poultry or

(b) By an employee in connection with the processing of articles from materials which were produced on a farm; also the packing, packaging, transportation, or marketing of those materials or articles. Such services do not constitute "agricultural labor," however, unless they are performed by an employee of the owner or tenant of the farm on which the materials in their raw or natural state were produced, and unless such processing, packing, packaging, transportation, or marketing is carried on as an incident to ordinary farming operations as distinguished from manufacturing or commercial operations.

[2] Subsection (f) of Sec. 203, Title 29 U.

S.C.A., also contained the following definition of agriculture:

"(f) 'Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 1141j(g) of Title 12, as amended), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market."

775, and in Lake Region Packing Association v. United States, 5 Cir., 146 F.2d 157, the Social Security taxes involved accrued prior to the passage by Congress of the definition of "agricultural labor" on August 10, 1939, and therefore, that definition could not be applied retroactively; but the transactions involved here were in February, 1944, and if the definition is relevant in applicability, it is appropriate in point of time. Although we will not go so far as to hold that the definitions of agricultural labor under other Acts are controlling in a case arising under the National Labor Relations Act, we do say that they are persuasive and may be taken into consideration[3] by us in determining what Congress meant by the term "agricultural labor" under the National Labor Relations Act, particularly since that exemption seems to have been a part of a general legislative pattern of those times which clearly indicates that the purpose of Congress in making the exemptions in each of these Acts was to relieve distressed farmers from burdens which it well knew they were not equipped to carry. Another reason we can take into consideration the 1939 definition of agricultural labor is that we consider it a very accurate one.

■ The term "agricultural labor" in the National Labor Relations Act is no broader than the same term in the Social Security Act.

■ Congress, as well as this Court, has recognized that the packing and preparing of agricultural products for the market is a necessary incident to any agricultural operation, for no farmer, dependent upon that which he produces to sustain his operations, could long exist if he could not market that which he produces, and so long as the operation of washing, packing, and preparing for market by the employees of a farmer is on that only which he has produced on his farm, it is a necessary incident to farming and is agricultural labor. The wheat farmer must thresh his wheat; the cane grower must cut his cane and make its juice into syrup; the cotton grower must gin and bale his cotton; the citrus grower must pick and pack his oranges; and the tomato grower must do likewise. So long as these undertakings are in the preparation and packing by him for market of that which he has grown on his farm, the labor necessary thereto is agricultural labor.

We have recognized in cases arising under the Social Security Act, Fosgate v. United States, supra, Lake Region Packing Association v. United States, supra, and National Labor Relations Board v. Edinburg Citrus Association, 5 Cir., 147 F. 2d 353, the distinction between agricultural and commercial labor in packing operations. In those cases we held that the labor of buying, packing, and marketing fruits or vegetables of another for compensation is a commercial, rather than an agricultural, enterprise, while in the first two of those cases we held that the packing of products from one's own farm, as an incident to marketing, is agricultural. We now discern no sound reason why that same distinction is not applicable in cases arising under the National Labor Relations Act.

■ The argument that the Respondent has 1,000 acres planted in tomatoes and grows, packs, and markets many carloads in a season and, because of the very nature and size of its operation, should be held to be engaged in an industrial enterprise as distinguished from the pastoral pursuits of a farmer, will not do. The exemption was not restricted to the forty-acres-and-a-mule farmer. It is not measured by the magnitude of his planting nor in the prolificacy of his harvest. In Larson v. Ives Dairy Co., 5 Cir., 154 F.2d 701, 702, we said:

"Here, however, there is but a single enterprise, and that a dairy farm. * * * The size of the farm, of course, does not matter—it is still a dairy farm." Here, also, the growing, harvesting, packing and selling are all a part of a single enterprise.

■ Since we are of the opinion that the operation of the Respondent is exempt from the National Labor Relations Act,

[3] Cf. Merrill v. Fahs, 324 U.S. 308, 65 S.Ct. 655, 89 L.Ed. 963, holding that where obvious reasons do not compel divergent treatment, identical phrases concerning the same subject matter are to be given identical construction.

it becomes unnecessary for us to pass upon any other question in the case.

The petition for the enforcement of the order of the Board is denied.