## LEE WILSON & CO. v. UNITED STATES.

### No. 13786.

United States Court of Appeals
Eighth Circuit.

Dec. 23, 1948.

George E. H. Goodner and Scott P. Crampton, both of Washington, D. C., and Max B. Reid, of Blytheville, Ark., for appellant.

Harry Marselli, Sp. Asst. to Atty. Gen.; Theron Lamar Caudle, Asst. Atty. Gen.,

and George A. Stinson, Ellis N. Slack, A. F. Prescott 'and John P. Wenchell II, Sp. Assts. to Atty. Gen., and James T. Gooch, U. S. Atty., and Walter L. Pope, Asst. U. S. Atty., both of Little Rock, Ark., for appellee.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

The appellant (who will be referred to as the taxpayer) brought this action to recover social security taxes, interest and penalty, which it had paid with respect to N. B. Thompson, who was employed by it from April 1, 1942, to July, 1945, in connection with the cutting, transporting and processing of alfalfa grown on its plantation in Mississippi County, Arkansas. The taxpayer considered that Thompson was engaged in "agricultural labor" within the meaning of § 1426 of the Internal Revenue Code, as § 1426 was amended by § 606 of the Social Security Act Amendments of 1939 the Federal Insurance Contributions Act, c. 666, 53 Stat. 1360, 1383–1387, 26 U. S.C.A. § 1426.[1]

The Commissioner of Internal Revenue believed that Thompson was not engaged in "agricultural labor" and that the taxpayer was therefore liable for the tax. The District Court agreed with the Commissioner,

and dismissed the complaint. This appeal followed.

The facts are not in dispute. The taxpayer farmed about 50,000 acres of land in Mississippi County, Arkansas. It produced principally cotton, alfalfa and soy beans. During the period in suit, the taxpayer devoted about 10,000 acres of its lands to the growing of alfalfa. Prior to this period the taxpayer handled its alfalfa by cutting it, turning it in the fields until dry, baling it, and selling it to farmers. From April 1, 1942, to July, 1945, 'about twenty to twenty-five per cent of the alfalfa was baled and used for feeding livestock. The rest of the alfalfa, as soon as cut, was hauled from the fields to one of the mills owned and operated by the taxpayer and located upon its own lands. The taxpayer had five of these mills. The alfalfa was then dehydrated, ground into meal, and sacked for the market. The taxpayer did not process alfalfa for other farmers, and did not buy alfalfa for processing. The alfalfa meal was sold to "mixed feed plants" and for "pig mashes, chicken mashes, and some dairy feed."

N. B. Thompson, during the period in suit, was the superintendent of the taxpayer's Wilson Mill or dehydrating plant and in charge of the cutting, hauling and processing of alfalfa grown on the tax-

[1] "§ 1426. Definitions.

"When used in this subchapter—

\* \* \* \* \* \*

"(b) Employment. The term 'employment' means \* \* \* any service, of whatever nature, performed after December 31, 1939, by an employee for the person employing him, \* \* \* except—

"(1) Agricultural labor (as defined in subsection (h) of this section);

\* \* \* \* \* \*

"(h) Agricultural labor. The term 'agricultural labor' includes all services performed—

"(1) On a farm, in the employ of any person \* \* \* in connection with raising or harvesting any agricultural or horticultural commodity \* \* \*.

"(2) In the employ of the owner or tenant or other operator of a farm, in connection with the operation, management, conservation, improvement, or maintenance of such farm and its tools and equipment, \* \* \* if the major

part of such service is performed on a farm.

\* \* \* \* \* \*

"(4) In handling, planting, drying, packing, packaging, processing, freezing, grading, storing, or delivering to storage or to market or to a carrier for transportation to market, any agricultural or horticultural commodity; but only if such service is performed as an incident to ordinary farming operations \* \* \*. The provisions of this paragraph shall not be deemed to be applicable with respect to service performed in connection with \* \* \* any agricultural or horticultural commodity after its delivery to a terminal market for distribution for consumption.

"As used in this subsection, the term 'farm' includes stock, dairy, poultry, fruit, fur-bearing animal, and truck farms, plantations, ranches, nurseries, ranges, greenhouses or other similar structures used primarily for the raising of agricultural or horticultural commodities, and orchards "

payer's plantation. He had nothing to do with the selling of the meal. His activities ceased when the sacked meal was placed in the warehouse for storage or delivered to a carrier for shipment. The mill was operated from about April first until about October fifteenth in each year. That was the growing season for alfalfa. Most of the time, the mill operated night and day during each season. Thompson was in charge of the mill while it was operating, but had a "night man" to assist him. From October until April, Thompson was engaged in repairing the mill machinery and getting the mill ready for the next season's operation.

The average farmer in Mississippi County, Arkansas, disposes of his alfalfa by curing it in the field, baling it, and selling it. The large farmer dehydrates and processes his alfalfa as does the taxpayer.

The District Court found that the time spent by Thompson in supervising the cutting and hauling of the alfalfa to the mill was "agricultural labor," that the time spent in the operation of the mill and in repairing or overhauling it was not "agricultural labor," and that more than fifty per cent of Thompson's time was devoted to the operation, repair and overhauling of the mill. The court concluded that Thompson was, therefore, engaged in a taxable employment, since § 1426(c) of the Internal Revenue Code provides, in substance, that if the services performed by an employee during one-half or more of any pay period constitute taxable employment, all the services of such employee for such period shall be deemed such employment.

By the terms of § 1426(h) (4), services performed in the processing of alfalfa by one engaged in farming is "agricultural labor" if the processing is "incident to ordinary farming operations." The taxpayer regards the entire operation of the raising, cutting, hauling, dehydrating, and grinding into meal, of its alfalfa as an ordinary farming operation. The Commissioner, on the other hand, apparently regards the taxpayer as being engaged in the business of operating alfalfa mills, to which its farming operations are incidental and merely a means of supplying raw material for the commercial production of alfalfa meal.

Treasury Department Regulation 106, § 402.208(e) (1), promulgated under the Federal Insurance Contributions Act, contains the following language relative to services described in § 1426(h) (4):

"Generally services are performed 'as an incident to ordinary farming operations' within the meaning of this paragraph if they are services of the character ordinarily performed by the employees of a farmer * * * as a prerequisite to the marketing, *in its unmanufactured state,* of any agricultural * * * commodity produced by such farmer * * *." [Italics supplied.]

This language is perhaps not inaccurate as a statement of a general rule, but we think that in so far as it is inconsistent with the language of the statute, it is not controlling. The statute does not say that processing of an agricultural commodity is not processing unless it leaves the commodity in an "unmanufactured state." The test provided by the statute is whether the processing is an incident to ordinary farming operations.

There can, of course, be an honest difference of opinion as to what farming operations are "ordinary" and what are not. This is well illustrated by some of the language used by the Supreme Court in Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212, in discussing the meaning of the word "ordinary" as used in a taxing statute.

It is, we think, ordinary for one engaged in agriculture to process his crops for the market in such a way as to obtain the best possible prices for them. It seems safe to say that an alfalfa grower who artificially dries his alfalfa, grinds it into meal, and puts it into sacks, is in no substantially different position than a similar grower who dries his alfalfa in the sun and bales it for market. Each, it seems to us, is to be regarded as having processed the alfalfa as an incident to ordinary, rather than extraordinary, farming operations. Under the undisputed evidence in this case, large growers of alfalfa in Mississippi County, Arkansas, were processing their

alfalfa in the same manner as did the taxpayer. It is not extraordinary for one engaged in agriculture on a large scale to use the best and most modern methods for the handling and processing of his crops for market.

We think that the taxpayer is to be regarded as being in the position of a farmer who dehydrates and grinds alfalfa as an incident to his ordinary farming operations, and not as a miller who incidentally operates a farm as a source of raw material for his mill. Congress unquestionably, we think, intended to relieve agriculture of the burden of social security taxes in respect of services which were, or which were considered by Congress to be, an integral part of farming activities. Birmingham v. Rucker's Imperial Breeding Farm, Inc., 8 Cir., 152 F.2d 837, 839, 840. Compare, Jones v. Gaylord Guernsey Farms, 10 Cir., 128 F.2d 1008; Larson v. Ives Dairy Co., Inc., 5 Cir., 154 F.2d 701. With the wisdom or logic of this Congressional policy, we can have no concern. We think the taxpayer was not liable for the tax assessed against it and is entitled to have a refund of the amount it was required to pay.

The judgment is reversed, with directions to enter a judgment for the taxpayer.