## NATIONAL LABOR RELATIONS BOARD v. PAPPAS & CO. et al.

### No. 13444.

United States Court of Appeals
Ninth Circuit.

April 22, 1953.

Rehearing Denied May 14, 1953.

George J. Bott, General Counsel, N. L. R. B., David P. Findling, Associate General Counsel, N. L. R. B., A. Norman Somers, Asst. General Counsel, N. L. R. B., Arnold Ordman and Duane Beeson, Attorneys, N. L. R. B., Washington, D. C., Franklin C. Milliken, Attorney, N. L. R. B., Washington, D. C., for petitioner.

Robert R. Rissman, Los Angeles, Cal., Moss, Lyon & Dunn and Arvin H. Brown, Jr., Los Angeles, Cal., for respondent Pappas & Co.

Before MATHEWS, STEPHENS, and ORR, Circuit Judges.

STEPHENS, Circuit Judge.

Pappas and Company is a corporation engaged in large scale farming operations on 3500 acres near Mendota, California. Its principal crops are melons, cotton, and grain. It ships many carloads of melons into and across several states. In the summer of 1950 a crop of melons, valued at $400,000 was harvested and hauled from the fields by the corporation's own employees to the corporation's own packing shed, located near a railroad about five miles from the fields, where the melons were sorted and crated for shipment.

Virgil Ramey was hired by the corporation on August 2, 1950, and was put to work on the melons at the packing shed. A few days later two business agents of the Fresh Fruit and Vegetable Workers Union, Local 78, and Food, Tobacco, Agricultural and Allied Workers Union of America, hereinafter called the Food Workers Union, protested to the corporation foreman at the shed against Ramey's employment. Although there was no union-security agreement in effect, the agents of the Food Workers Union asked the packing shed foreman to discharge Ramey because he was behind in his dues in that union. When the foreman refused the request, the agents of the Food Workers Union called upon the employees to stop work, which they did; and they resumed work only upon Ramey's departure at the foreman's request.

In response to a charge by another union, the CIO United Fresh Fruit and Vegetable Workers Local Industrial Union 78, of which Ramey was a member in good standing, the National Labor Relations Board filed a complaint against the Pappas corporation alleging violations of Sections 8 (a) (1) and 8(a) (3) of the National Labor Relations Act, 29 U.S.C.A. § 158(a), hereinafter referred to as the Act, and against the Food Workers Union, alleging violations of Sections 8(b) (1) (A) and 8 (b) (2), 29 U.S.C.A. § 158(b). The Board found that the corporation had laid Ramey off at the request of the Food Workers Union because he was not a member thereof in good standing. The Board concluded that both the corporation and the Food Workers Union had thereby committed unfair labor practices within the meaning of Sections 8(a) (1), 8(a) (3), 8(b) (1) (A), and 8(b) (2) of the Act, and ordered the corporation and the Food Workers Union to cease and desist their unfair labor practices, and "jointly and severally make Ramey whole for loss of wages incurred as a result of the discrimination against him" for the period specified. The Board further ordered the corporation to offer Ramey immediate reinstatement without prejudice to his seniority or other rights and privileges. The order has not been complied with and the Board petitions this court for enforcement thereof against the Pappas corporation and the Food Workers Union. Only the Pappas corporation resists the Board's enforcement petition.

The statement of facts as to shipments of melons into other states, which was proved, demonstrates that the melons were moved in interstate commerce.

The corporation claims that it is not guilty of any unfair labor practice and, as a sort of confession and avoidance it would seem, pleads that in the exigency of the occasion—the melons required immediate attention—the corporation was impelled to yield to the labor agents' demands or suffer a very substantial loss. We have, in the past, been keenly aware of like unfair situations but it appears to be one of the inequities inherent in the difficult problem of governmental regulation of employer-employee relations. This unfortunate "squeeze" cannot be pleaded as a defense to the Board's order. In our opinion, if the Board has jurisdiction over the shed employees, its determination that the corporation is guilty of unfair labor practices is not erroneous.

The corporation requests us to refuse enforcement of the Board's order on the further ground that the employees were agricultural laborers and outside the Act. The applicable part of the definition of "employee" provided by the Act is:

"The term 'employee' * * * shall not include any individual employed as an agricultural laborer * * *." 29 U.S.C.A. § 152(3).

The Board contends that we have no power to entertain the question because "no objection" upon the point was raised in the case before it reached us, and cites § 10(e) of the Act as authority. 29 U.S. C.A. § 160(e). The applicable part of the section is:

"* * * No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, [upon petition for enforcement], unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C.A. § 160(e).

There appear to be no circumstances in the case justifying our finding that they are extraordinary. The corporation, with full knowledge of the charge against it, chose to appear at the hearing without counsel and without asserting any defense. The Board's Examiner proceeded to go into the circumstances of the alleged unlawful discharge and the circumstances relating to the status of the shed employees. At no time did the corporation claim any specific status for these employees. Since the Board issued its order against the corporation it is implicit that it found the employees to be other than agricultural.

Here, in this court, for the first time the corporation claims that the employees were outside the jurisdiction of the Board because they were agricultural laborers.

Section 10(e) of the Act excludes our entertainment of the claim upon this review. Until Marshall Field & Co. v. National Labor Relations Board, 1943, 318 U.S. 253, 63 S.Ct. 585, 87 L.Ed. 744, there was room for argument that "objection" as used in § 10(e) related to procedural matters and not to claims as defenses. That case, however, definitely puts all doubts to rest. It determines that, except in extraordinary circumstances, no defense other than jurisdiction of the subject matter which was not made to the Board can be raised at the hearing on petition for enforcement of the Board's order.

The case of In re National Labor Relations Board, 1938, 304 U.S. 486, 494, 58 S.Ct. 1001, 82 L.Ed. 1482, treats the subject of jurisdiction in the following manner: "Jurisdiction as the term is to be applied in this instance, is the power to hear and determine the controversy presented, in a given set of circumstances. A court has jurisdiction, in another use of the term, to examine the question whether that power is conferred upon it in the circumstances disclosed, but if it finds such power is not granted it lacks jurisdiction of the subject matter and must refrain from any adjudication of rights in connection therewith."

■ It is clear that the general subject matter of the instant case, to-wit, a labor relations controversy, was within the first kind of the Board's jurisdiction as mentioned in the last above cited case. Having such jurisdiction, it follows that the Board had for decision the second kind of jurisdiction in the matter of determining whether the facts brought the case within the orbit of the Act upon which the case was based. The first kind of jurisdiction can be questioned at any time, but a finding as to the second kind of jurisdiction, being subject to evidence as to whether the facts of the case are within the reach of the applicable statute, stands upon the same basis as any other finding of fact. It cannot be collaterally attacked. And it can be reviewed only as any other finding of fact in the case can be reviewed. We have seen that the statute, which provides for the review by the United States Court of Appeals, specifically limits the review, § 10(e), to "objections" or claims presented at the Board hearing.

We are aware of the following language used in National Labor Relations Board v. Cheney Lumber Co., 1946, 327 U.S. 385, 388, 66 S.Ct 553, 554, 90 L.Ed. 739: "Orders of the National Labor Relations Board are enforceable by decrees of circuit courts of appeals. In such an enforcement proceeding, a court of appeals may enforce or modify or set aside the Board's order. § 10(e), 49 Stat. 454, 29 U.S.C. § 160(e), 29 U.S.C.A. § 160(e). Since the court is ordering entry of a decree, it need not render such a decree if the Board has patently traveled outside the orbit of its authority so that there is, legally speaking, no order to enforce."

Whether the language of the Cheney case has the effect of modifying the Marshall Field case, so that we could refuse to enforce the Board's order if upon a review of the evidence we found no evidence to support the implied finding that the employees were non-agricultural or that the evidence was conclusive that the employees were agricultural laborers, we need not decide. This is true because in reading the evidence in our case relative to the status of the shed employees we find evidence that they were furnished by a contractor. It may well be that, had respondent claimed

before the Board that the shed employees were agricultural laborers, a full examination into this circumstance would have revealed a condition found present in the Idaho Potato case, Idaho Potato Growers v. National Labor Relations Board, 9 Cir., 1944, 144 F.2d 295. There the employees were found to be non-agricultural because their services were contracted for by the farmer specifically as expert potato sorters for shipment. To say it in another way, the farmer had turned a distinct part of his farm work over to men in the business of attending to such distinctive work. Here is a perfect example of why any claim of the respondent should be revealed to the Board. See North Whittier Heights Citrus Association v. National Labor Relations Board, 9 Cir., 1940, 109 F.2d 76; National Labor Relations Board v. Tovrea Packing Co., 9 Cir., 1940, 111 F.2d 626; Idaho Potato Growers v. National Labor Relations Board, 9 Cir., 144 F.2d 295; and National Labor Relations Board v. John W. Campbell, Inc., 5 Cir., 1947, 159 F.2d 184.[1]

The petition for enforcement is granted.

1. The North Whittier Heights, Tovrea, and Idaho Potato cases were decided before the Congress prohibited the expenditure of money by the National Labor Relations Board in relation to agricultural laborers as that term is defined in the Fair Labor Standards Act of 1938, 52 Stat. 1060, § 3(f), 29 U.S.C.A. § 203(f). We think the legislation did not weaken these cases as authorities.