(112 So. 428)

**EMERSON–BRANTINGHAM IMPLEMENT CO. v. ARRINGTON.  (3 Div. 762.)**

(Supreme Court of Alabama.  Jan. 22, 1927.
Rehearing Denied March 31, 1927.)

**1. Sales ⚌479(11)—Seller repossessing chattels sold under conditional contract abandons right to recover purchase price.**

The seller of chattels on conditional sale contract abandons his right to recover the purchase price by repossessing them.

**2. Sales ⚌479(11)—Repossessing part of machinery prevents recovery for remainder in buyer's hands, where conditional sale was single transaction.**

A seller on conditional contract, by repossessing a material part of machinery, loses the right to recover purchase price of that remaining in buyer's hands, where sale was a single transaction for the whole of which an aggregate price was due.

**3. Contracts ⚌273—Party must rescind contract in entirety, if at all.**

One cannot hold under such part of the contract as may be desirable to him and avoid the residue, but must rescind in toto if at all.

**4. Sales ⚌479(11)—Buyer's selling part of machinery would sever conditional sale contract, so that seller could recover price after repossessing remainder.**

Buyer's sale of part of machinery would effect severance of that part of conditional sale contract under which he purchased, so that seller would not lose right to recover therefor by repossessing the remainder in the buyer's hands.

**5. Commerce ⚌40(1)—Sale and notes by corporation shipping from Tennessee to Alabama constituted "interstate commerce," and were not void though seller was not qualified for business under Alabama law.**

Conditional sale of machinery by a foreign corporation and shipment from Tennessee to buyer in Alabama and buyer's notes given as evidence of indebtedness thereunder constituted "interstate commerce," and were not void though corporation was not qualified to do business under Alabama law.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

**6. Sales ⚌450—"Conditional sale" reserves title as security for buyer's promise to pay for goods.**

A transaction, by which the buyer unconditionally promises to pay the purchaser stipulated price for articles and seller reserves title in himself as security for payment, is a "conditional sale."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conditional Sale.]

**7. Appeal and error ⚌1040(8)—Sustaining demurrer to replication alleging estoppel was prejudicial error.**

Sustaining demurrer to replication alleging estoppel to plea of non est factum was prejudicial error, since estoppels must be specially pleaded and are not available under general issue.

On Rehearing.

**8. Sales ⚌479(7)—Plea that seller under conditional contract abandoned recovery for part of goods by repossessing remainder, but not alleging purchaser's possession of remainder, held demurrable.**

Defendant's plea that seller, by repossessing part of machinery purchased by defendant under conditional sale contract for purpose of resale, abandoned recovery for remainder, was demurrable, as not sustaining defendant's burden to allege goods were still in his possession.

**9. Estoppel ⚌52, 58—"Plea of estoppel" presents right to insist on facts, and is grounded on injury from pleader's reliance on adversary's conduct or declarations.**

"Plea of estoppel" presents, not the issue of truth of facts pleaded, but right and power to insist on them, and is grounded on injury

resulting from pleader's reliance on adversary's conduct or declarations.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Estoppel.]

**10. Bills and notes ☞486—Payee's replication to plea of non est factum denying notice of change in company's ownership between contract and execution of notes held not generally demurrable.**

To plea of non est factum in Code form, replication that defendant under trade-name entered into conditional sale contract, and afterwards company executed notes in pursuance thereof under same trade-name without plaintiff's knowledge or notice of change in ownership, alleged estoppel and was invulnerable to general demurrer, although defective in not alleging injury.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Action by the Emerson-Brantingham Implement Company against G. B. Arrington, who formerly did business under the trade-name and style of Montgomery Tractor & Implement Company. From a judgment of nonsuit, plaintiff appeals. Reversed and remanded.

The action is on two promissory notes made on October 16, 1920, and payable respectively on November 15, 1920, and January 1, 1921. There is also a count for merchandise, goods, and chattels sold by plaintiff to defendant on May 20, 1920. As amended, the sole defendant is G. B. Arrington, "who formerly did business under the trade-name and style of Montgomery Tractor & Implement Company."

The defendant pleaded the general issue, and non est factum in Code form, and also some special pleas, of which 8, 9, 10, and 11 went to the jury.

Plea 8 is as follows:

"(8) That the consideration for the notes and account sued on was merchandise consisting of certain implements and machinery, sold by plaintiff to the Montgomery Tractor & Implement Company under and by virtue of a written contract entered into on, to wit, May 20, 1920, a substantial copy of which contract is hereto attached, marked 'Exhibit A,' and made a part of this plea, with leave of reference thereto as often as may be necessary. That on, to wit, February 7, 1921, the plaintiff, acting through its agent, one H. M. Murphy, did assert its right under the terms of said contract to repossess, and did repossess, itself of a substantial portion, to wit, $2,000 in value of the machinery and implements delivered by the plaintiff to said Montgomery Tractor & Implement Company under the terms of said contract; wherefore, this defendant says that the plaintiff elected to abandon and did abandon its right to sue for the price or any part of the price of the implements and machinery so delivered by plaintiff to said Montgomery Tractor & Implement Company under the terms of said contract."

Plea 9 is as follows:

"(9) That the consideration for the notes and account sued on was for certain machinery and farming implements sold by the plaintiff to Montgomery Tractor & Implement Company under and by virtue of a certain contract entered into by and between plaintiff and said Montgomery Tractor & Implement Company made on, to wit, May 20, 1920, a substantial copy of which contract is attached to and made a part of plea No. 8, and is now made a part of this plea the same as if set out herein, with leave of reference thereto as often as may be necessary. That at the time said contract was entered into, the plaintiff was a foreign corporation, and has not complied with the laws of the state of Alabama requiring foreign corporations to file in the office of the secretary of state certified copy of its articles of incorporation and a declaration naming an agent and known place of business in this state; neither at said time had the plaintiff obtained a permit to do business in this state as a foreign corporation. Wherefore, defendant says that the said notes and account sued on are void and of no effect."

Plea 11 is in substance the same as plea 9.

Plea 10 combines the defenses set up in pleas 8 and 9, with more elaboration of details.

All of these pleas exhibit the contract of sale, in the form of an order signed at Montgomery, Ala., by plaintiff and "Montgomery Tractor & Implement Company, by Emery S. Egge, Mg'r," directing shipment to said tractor and implement company from Nashville, Tenn., of a schedule of some 20-odd items of farm machinery; each item being separately priced, and the aggregate price being shown as $2,717.94.

Pertinent provisions of the contract are:

"1. * * * It is expressly agreed that upon receipt of goods under this contract, and upon monthly balance, or at settlement time at the option of said company we will execute notes to it for the amount to be paid for the goods so received according to the terms of this contract; and the giving of such notes shall not vest the title to such goods in us, nor be deemed or regarded as a payment for such goods, but only as evidence of indebtedness, and it is agreed that title to ownership of, and right of possession of all goods shipped under this contract, and all proceeds of sales of same, and proceeds of insurance in case of loss, to the amount of the invoice price of goods destroyed, shall be and remain in said company, until said goods are paid for in cash, and until all notes given by us to said company pursuant to this contract, shall be paid in cash. All notes to be drawn with exchange and all remittances to be made in Chicago Exchange. Said notes shall be secured by good farmers' notes not less than $1.25 on the dollar when requested by said company. No cash discounts allowed if we owe said company any past-due notes or account. Freight and allowances shall be deducted before cash discounts are computed. Any open account shall become due at the option of said company.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

All past-due accounts shall draw at the highest contract rate."

"10. We agree to sell to good and responsible parties only, and that all sales made of such goods shall be for not less than the invoice prices and to accept as full compensation, the amount realized in excess of said invoice prices; and we agree to insure all goods delivered under this contract for the full invoice price for the benefit of said company, to keep the same well housed and in good condition until sold or reshipped; to keep the same free from all charges and expenses, including taxes; and should any goods remain unsold at the end of the selling season, we agree to pay for same in cash, or notes secured by good collateral notes to an amount equal to 25 per cent. in excess of notes so given; or if the Emerson-Brantingham Implement Company elects to order such goods, or any part thereof, shipped elsewhere we will ship and deliver them free of all charges including freight. If any goods redelivered are in unsalable or damaged condition, I or we agree to pay the Emerson-Brantingham Implement Company such sum as shall be necessary to put such goods in salable condition."

"12. We agree to make an accounting to the Emerson-Brantingham Implement Company for all goods sold, and turn over to it the proceeds of sale of same whenever requested so to do."

Demurrers to pleas 8, 9, 10, and 11, were overruled, and plaintiff replied to plea 8:

"That the plaintiff did not repossess itself of any portion of the machinery and implements delivered by it to the defendant for the purchase price of which this suit is brought, but plaintiff avers that, on the contrary, the machinery and implements for the purchase price of which this suit is brought were never repossessed or taken back by it from the defendant."

And to the plea of non est factum:

"That G. B. Arrington was doing business under the trade-name of Montgomery Tractor & Implement Company, which fact was known to the plaintiff; that while so doing business as said Montgomery Tractor & Implement Company, the defendant purchased from the plaintiff certain machinery, on, to wit, May 20, 1920.

"Plaintiff further avers that at the time said machinery was sold to the defendant, it was agreed by and between the plaintiff and the defendant that the defendant subsequently, at the option of the plaintiff, would execute notes for the purchase price of said machinery; that subsequently on, to wit, October 6, 1920, the Montgomery Tractor & Implement Company, at the request of the plaintiff, executed the notes here sued on. The plaintiff further avers that if between the time said machinery was purchased and said notes were executed there was any change in ownership of said Montgomery Tractor & Implement Company, plaintiff had no notice of such change in ownership and had no knowledge thereof, but accepted said notes under the belief that said Montgomery Tractor & Implement Company was still owned by the defendant and was the trade-name under which he was conducting his business."

Demurrers were sustained to these replications, and thereupon, on account of these several rulings on the pleadings, plaintiff took a voluntary nonsuit, with leave to review the rulings on appeal.

Weil, Stakely & Vardaman, of Montgomery, for appellant.

Where goods are sold with retention of title until fully paid for, repossession of a part of the goods by the seller does not constitute such rescission of the contract as to preclude the seller from holding the buyer responsible for the price of the goods not repossessed. The contract here is one of conditional sale, or a consignment contract. 1 Williston on Contr. (2d. Ed.) 790; Emerson-Brantingham Imp. Co. v. Lawson (D. C.) 237 F. 877; Tyson v. Jennings Prod. Co., 16 Ala. App. 374, 77 So. 986; Ex parte Tyson, 201 Ala. 331, 77 So. 993. Where goods are delivered from one state into another state, the shipment is interstate, and the fact that title is retained does not affect the character of the shipment. Rearick v. Penna, 203 U. S. 507, 27 S. Ct. 159, 51 L. Ed. 295; Dozier v. Ala., 218 U. S. 124, 30 S. Ct. 649, 54 L. Ed. 965, 28 L. R. A. (N. S.) 264; 12 C. J. 26; 5 R. C. L. 770; 9 Fletcher, Cyc. Corp. 9982; D. M. Ferry Co. v. Hall, 188 Ala. 178, 66 So. 104, L. R. A. 1917B, 620. The fact that a foreign corporation is doing business in a state without qualifying therefor is not available to an agent as a defense to enforce a liability growing out of the agency. Georgia Home Ins. Co. v. Boykin, 137 Ala. 350, 34 So. 1012; Phœnix Ins. Co. v. Seegers, 192 Ala. 103, 68 So. 902; 132 Tenn. 265, 177 S. W. 949, L. R. A. 1916A, 640; 14A C. J. 1306. The notes sued on are in legal effect the obligation of Arrington. Hendley v. Bittinger, 249 Pa. 193, 94 A. 831, L. R. A. 1915F, 711; 8 C. J. 107; Wright v. Forgy, 126 Ala. 389, 28 So. 198.

Steiner, Crum & Weil, of Montgomery, for appellee.

Plea 8 states a good defense, if the contract. be considered one of conditional sale. Jefferson v. Sawyer, 206 Ala. 73, 89 So. 168; Alexander v. Mobile Auto Co., 200 Ala. 586, 76 So. 944; Davis v. Millings, 141 Ala. 378, 37 So. 737; Madison River L. S. Co. v. Osler, 39 Mont. 244, 102 P. 325, 133 Am. St. Rep. 561; In re Atlantic G. & P. S. S. Co. (D. C.) 289 F. 145. Replication 1 to plea 8 neither denies nor confesses and avoids the averments of the plea. Shearin v. Pizitz, 208 Ala. 244, 94 So. 92; Burnett & Bean v. Miller, 205 Ala. 606, 88 So. 871. The facts stated in the replication were available under a traverse of the plea. Long v. Myers, 202 Ala. 238, 80 So. 76. The contract was one of agency; plaintiff had not complied with the requirements for doing business in the state, and pleas 9, 10, and 11 set up a good defense. Bowdoin v. Ala. Chem. Co., 201 Ala. 582, 79

So. 4; Ferry v. Hall, 188 Ala. 178, 66 So. 104, L. R. A. 1917B, 620; Cable Piano Co. v. Estes, 206 Ala. 95, 89 So. 372; Langston v. Phillips, 206 Ala. 174, 89 So. 523; Thomas Mfg. Co. v. Knapp, 101 Minn. 432, 112 N. W. 989; Woodson v. Hopkins, 85 Miss. 171, 37 So. 1000, 38 So. 298, 70 L. R. A. 645, 107 Am. St. Rep. 275; Grace v. State, 108 Miss. 767, 67 So. 212; Ins. Co. v. Kennedy, 96 Tenn. 711, 36 S. W. 709. The doctrine of estoppel of an agent from pleading failure of the principal to comply with the statutes is not applicable. Replication 4 to pleas 4 and 5 is defective and subject to demurrer. Patterson Lbr. Co. v. Daniels, 205 Ala. 520, 88 So. 657.

SOMERVILLE, J. [1] It is the settled law in this state that the vendor in a conditional sale of chattels, who successfully asserts his right to repossess the property, thereby abandons his right to recover the purchase price. Sandlin v. Maury Nat. Bank, 210 Ala. 349, 98 So. 190; Sanders v. Newton, 140 Ala. 335, 37 So. 340, 1 Ann. Cas. 267. This principle is very generally recognized by the American courts. 24 R. C. L. 491, § 785.

[2] The proposition presented by defendant's special plea numbered 8 is that when a conditional vendor has exercised his right to repossession by taking from the vendee a part of the property sold to him, he elects to pursue that remedy in toto, and loses the right to recover, not merely the whole of the purchase price, but even such part thereof as covered that part of the property which has not been reclaimed.

The theory of the plea is that, although the sale in this case was for numerous items of machinery, each item separately priced, the sale was in fact a single transaction, or else became by statement a single account, for the whole of which an aggregate price was due; and that this claim or account could not be split into two or more parts, one part to be satisfied by rescission of the sale as to its items, and the other part by recovery of the price applicable to its items.

Counsel have cited no case, and our own search has discovered none, in which this proposition has been discussed. This case seems, therefore, to be one of first impression, and it must be determined by the application of general principles.

In the case of Oliver v. Holt, 11 Ala. 574, 578 (46 Am. Dec. 228), it was said:

"This rule of law, that a demand not divisible in its nature, cannot be split up into several causes of action, has been recognized by this court in two cases. * * * A consequence of this rule is, that a judgment in a suit for a part of the claim, is a bar to an action for the remainder. This results necessarily from the entirety of the contract; being incapable of division, so as to be the foundation of several suits, a recovery of a part, is an election to take that for, and is therefore equivalent to, a recovery of the whole. This principle has been asserted in a great many cases. Guernsey v. Carver, 8 Wend. [N. Y.] 492, (24 Am. Dec. 60), was an action for goods sold and delivered upon an account, consisting of distinct items, delivered on different days, but all due. It was held to be an entire demand, and that a recovery for a part was a bar to an action for the residue. * * * Modifications of the rule may be found in some cases, which seem to invade this principle; but the rule itself is, we believe, universally recognized, and indeed the only question would seem to be, whether a continuous running account, is an entire thing, or whether each item of which it is composed is a separate debt. That it is an entire thing, is expressly decided in many of the cases referred to, and on principle it would seem difficult to attain any other conclusion."

And it was so held, though the items of the account formerly recovered, and those presently sued for, were separate and distinct. This view is sustained by an overwhelming weight of authority. 1 Corp. Jur. 1113, § 288. A fortiori, stated accounts are held to be entireties, so that separate items are not suable separately except by abandoning all others. 1 Corp. Jur. 1113, § 290.

In McLane v. Miller, 12 Ala. 643, it was declared that no action will lie for the recovery of a balance of a claim, a part of which has been used as recoupment of damages in a former suit. That case was reaffirmed in S. & N. Ala. R. R. Co. v. Henlein, 56 Ala. 368, 374, wherein the court quoted approvingly from Guernsey v. Carver, 8 Wend. (N. Y.) 492, 24 Am. Dec. 60, that—

"The whole account being due when the first suit was brought, it should be viewed in the light of an entire demand, incapable of division for the purpose of prosecution. The law abhors a multiplicity of suits."

[3] It is elementary law that a party "cannot hold onto such part of the contract as may be desirable on his part and avoid the residue; but must rescind in toto, if at all." Stephenson v. Allison, 123 Ala. 439, 447, 26 So. 290, 292; Kelly v. L. & N. R. R. Co., 154 Ala. 573, 578, 45 So. 906; 35 Cyc. 139 (sales); 13 Corp. Jur. 623, § 682 (contracts).

[4] The application of these principles to the instant case lead to the conclusion that, in retaking possession of any material part of the machinery sold, the plaintiff rescinded the entire contract of sale, thereby canceling the consideration which supported the obligation to pay either the note or the purchase price due on the account, and so lost the right to have any recovery thereon, either total or partial; provided that it is made to appear, by appropriate allegation in the plea, that the residue of the machinery was still in the possession of the vendee. If the vendee had sold any parts of the machinery, that of course effected a severance of that part of the account; and for the invoice price of that part an action could be maintained, notwithstanding the vendor's repossession of the

other part. This is plainly the purpose and effect of the contract.

The plea is defective in the particular noted, and did not bring the defense within the principle under discussion, and the demurrer should have been sustained.

[5] Defendant's pleas numbered 9, 10, and 11, seek to avoid liability on the notes and account sued on, upon the theory that plaintiff is a foreign corporation and has not qualified to do business within the state as required by the laws of Alabama; and that the claims sued on are founded on a transaction which constituted the doing of business within the state.

The question presented by the demurrer to these pleas is whether the shipment of the machinery, under the terms of the contract exhibited, was interstate commerce, or was, on the contrary, doing business within the state, and therefore subject to its laws.

[6] Notwithstanding some of its minor provisions, the dominant and distinguishing features of this contract are the unconditional promise of the purchaser to pay a stipulated price for the articles to be shipped, and the reservation of title in the vendor until they were paid for, as security for that payment. These features clearly constitute the transaction a "conditional sale," as distinguished from a mere agency to sell on consignment or otherwise. Sumner v. Woods, 67 Ala. 139, 42 Am. Rep. 104; Industrial Finance Corporation v. Turner (Ala. Sup.) 110 So. 904;[1] Note to Fleet v. Hertz, 94 Am. St. Rep. 238, 242. This identical contract was so construed in the case of Emerson-Brantingham Implement Co. v. Lawson (D. C.) 237 F. 877, 881, the court saying:

"There can be no question but that the orders signed by Brom, and the delivery of the goods thereunder, constituted a conditional sale. Language could not be plainer." 

The machinery in question was shipped by the vendor from Nashville, Tenn., to the purchaser at Montgomery, Ala. The theory of these pleas seems to be either that plaintiff was selling this machinery in Alabama through the local agency of this defendant— the transaction with defendant being a consignment merely—or that the mere fact that the contract was made in Alabama excludes it from the field of interstate commerce, and stamps it as intrastate business.

The first theory, as we have seen, is invalid, because the transaction was in fact a sale to defendant. And, it may be observed, if the theory of consignment and agency were conceded, defendant, as agent, could not, it seems, take advantage of the failure of plaintiff to qualify for doing business within the state, so far as concerns his own obligations to plaintiff, growing out of their mutual contract of agency. Georgia Home Ins. Co. v. Boykin, 137 Ala. 350, 368, 34 So. 1012;

[1] 215 Ala. 460.

In re Hovey, 198 Pa. 385, 48 A. 311; Memphis, etc., Co. v. Agnew, 132 Tenn. 265, 177 S. W. 949, L. R. A. 1916A, 640, 646; 14a Corp. Jur. 1306, § 4010. The demurrers, however, do not present that question.

The second theory is contrary to the decisions of this court, and to those of the federal courts. Ware v. Hamilton Brown Shoe Co., 92 Ala. 148, 9 So. 136; Culberton v. American Trust & Banking Co., 107 Ala. 457, 19 So. 34; Dozier v. State of Ala., 218 U. S. 124, 30 S. Ct. 649, 54 L. Ed. 965, 28 L. R. A. (N. S.) 264; Sioux Remedy Co. v. Coke, 235 U. S. 197, 35 S. Ct. 57, 59 L. Ed. 193, 196, 197.

On the face of the pleadings, the transaction in question—the sale and shipment of the machinery—was interstate commerce, and not subject to the laws of Alabama. The case of Cable Piano Co. v. Estes, 206 Ala. 95, 89 So. 372, is not in point, since in that case the property sold was within the state, and hence a sale made within the state was in no sense interstate commerce. It is of no consequence that a clause of the contract provides for a resale to or for the vendor, at its option, of goods remaining unsold in the vendee's hands at certain times, because no such sale is relied on by plaintiff. So, also, the case of Langston v. Phillips, 206 Ala. 174, 89 So. 523, is not in point, because the business done was not an act of commerce.

It results from the foregoing considerations that pleas 9, 10, and 11, set up invalid defenses, and the demurrers thereto should have been sustained.

[7] Plea 4 is a plea of non est factum in Code form. The replication to this plea sets up a good estoppel against the defense presented by the plea, and the demurrer to the replication was erroneously sustained. The elimination of this replication cannot be held as error without injury, since estoppels must be specially pleaded, and are not available under the general issue.

For the errors noted, the judgment of nonsuit will be reversed, and the cause remanded for further proceedings.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.

### On Rehearing.

SOMERVILLE, J. [8] We are satisfied of the correctness of our conclusion that defendant's plea 8 is defective in its omission of any allegation showing that when plaintiff repossessed itself of a part of the goods, as alleged, the other goods were still in defendant's possession, and subject to repossession by plaintiff. The plea exhibits the contract of purchase, showing that the goods were purchased for resale to defendant's customers, and that they would be thus resold in the ordinary course of business. It will not be presumed, in favor of the pleader,

that any part of these goods remained unsold; and the burden is unquestionably on him to allege the facts showing the conclusion upon which he relies as a defense to the suit.

Our attention is directed by counsel for defendant to the case of Bowdoin v. Ala. Chemical Co., 201 Ala. 582, 79 So. 4, as in conflict with our holding that the contract herein evidenced a conditional sale, and with the further observation that that case should be overruled if the present decision stands. It will suffice to say that in that case· the contract expressly provided that the goods were "shipped on consignment to the customer as trustee for the company"—a provision not found in the present contract. The distinction is clear and decisive, and too obvious to require exposition.

[9] Counsel insist with much earnestness that plaintiff's replication to defendant's plea of non est factum, as to the notes sued on, is not a valid answer to those pleas. The replication is, of course, by way of estoppel. The nature of such a plea has been correctly stated as follows:

"The issue which a plea of estoppel presents is not to determine the truth or validity of the particular facts pleaded, but the right and power of the party to insist upon them. A plea of estoppel is not a plea of confession and avoidance, although it resembles a plea in avoidance in that it alleges new matter. While the plea is usually spoken of as a plea in bar, it is not technically such, although, like a plea in bar, it denies the right of action or defense, by denying the right to assert the facts. So the rule that the pleader, if he does not demur, must either traverse or confess and avoid all the material allegations to which he makes answer, has no application to pleadings in estoppel, which are considered an exception to the rule." 21 Corp. Jur. 1247, § 258.

It is, of course, true that estoppels are grounded on injury resulting from the pleader's reliance upon his adversary's conduct or declarations; and the pleader must show that his position has been so changed by that reliance that he would be substantially prejudiced if his adversary be now allowed to assert and show the contrary. Carter v. Darby, 15 Ala. 696, 50 Am. Dec. 156; Adler v. Pin, 80 Ala. 351, 354; 21 Corp. Jur. 1135, § 136.

[10] The replication here in question is defective in not showing the fact or the threat of such an injury, but no ground of the demurrer points out that defect. The grounds assigned—other than several inapt special grounds—are general only, and are not sufficient, under our rules of pleading, to present the objection.

Counsel cite the cases of Cunningham v. Bragg, 37 Ala. 436, and Harwell, Adm'r, v. Phillips, 123 Ala. 460, 26 So. 501 (to which may be added Myatts v. Bell, 41 Ala. 222), to the proposition that when a partner has retired from the firm, though he is liable for pre-existing debts, he cannot be bound by notes given by the remaining partners in payment or extension of those debts. We are not dealing here with the obligation of a retired partner; but, conceding the analogy, the cases relied on involved no question of estoppel, but merely a joinder of issue on the defendant's plea of non est factum.

On the other hand, this court held, in Grady v. Robinson, 28 Ala. 289, that—

"A relinquishment by one ostensible partner to another, of all his interest in the partnership, does not discharge him from liability as a partner to third persons who afterwards deal with the company without notice of such relinquishment."

See, also, Mauldin v. Branch Bank, 2 Ala. 502, where the subject is fully discussed. In such cases, as noted in 20 R. C. L. 982, § 216, "the liability is based on principles of estoppel." The same authority declares:

"Secret articles of dissolution of partnership of which no notice is given will not terminate the liability of each for the acts of the other partners. For example, where no notice has been given, *a new note or contract* made by one partner in the name of the firm and within the scope of the partnership business operates to bind the firm notwithstanding the dissolution." (Italics supplied.) · 20 R. C. L. 966, § 194.

As already observed, this is not the case of a retiring partner, but of a retiring proprietor and his successor in business, both operating continuously under a trade-name which prima facie imported a partnership if there was no incorporation; but the analogy, both legal and moral, is strong and persuasive.

We see no reason for changing any of the views and conclusions originally declared, and the application for rehearing will be denied.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.