John A. NIX and W. P. Wilson,
Appellants,

v.

The FARMERS MUTUAL EXCHANGE
OF CALHOUN, Inc., Appellee.

No. 15145.

United States Court of Appeals,
Fifth Circuit.

Jan. 25, 1955.

Gus La Vern Hiller, in pro. per.

No appearance for respondent.

Before DENMAN, Chief Judge, and BONE and ORR, Circuit Judges.

James Maddox, Rome, Ga., for appellants.

Wm. B. Spann, Jr., Daniel B. Hodgson, Atlanta, Ga., Dean Covington, Rome, Ga., Alston, Sibley, Miller, Spann & Shackelford, Atlanta, Ga., Andrews & Covington, Rome, Ga., of counsel, for appellee.

Stuart Rothman, Sol., Bessie Margolin, Chief of Appellate Litigation, Sylvia S. Ellison, Morton J. Marks, Attys., U. S. Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Atty., Birmingham, Ala., amici curiæ.

Before HUTCHESON, Chief Judge, and HOLMES and RUSSELL, Circuit Judges.

## PER CURIAM.

The Farmers Mutual Exchange of Calhoun, Inc., a nonprofit, cooperative association incorporated under the laws of the State of Georgia,[1] has its principal office and place of business in Calhoun, Georgia, where it operates what we will call a rural farm supply store. John A. Nix and W. P. Wilson were employed by the Exchange for several months in 1951 and 1952. During the period of their employment they worked in excess of 40 hours per week, but were paid neither minimum wages nor overtime compensation, within the meaning of Secs. 6 and 7 of the Fair Labor Standards Act, as amended.[2] Pursuant to Sec. 16(b) of that Act, Nix and Wilson instituted this action against Exchange to recover unpaid minimum wages, overtime compensation, liquidated damages, and attorney's fees. Exchange answered and denied that it was liable to the plaintiffs, claiming, inter alia, exemptions under Secs. 13(a) (1), 13(a) (2) and 13(a) (6) of the Act. Trial was had to the court without a jury. Based upon its findings of fact, the trial court concluded that the defenses were good and entered judgment for Exchange.[3] On this appeal from that judgment, plaintiffs insist, for various reasons urged, that their duties do not fall within any of the exemptions relied upon and that the court erred in ruling as it did.

The case comes to us on an agreed statement of the evidence, except for the testimony of two witnesses which has been transcribed and made a part of the record. The record shows that approximately one-third of Exchange's dollar volume of business consists of the sale of feed, fertilizer, seed and other miscella-

1. Chapt. 65-2, 1933 Code of Georgia.

2. 29 U.S.C.A. § 201 et seq.

3. This case was consolidated for trial with the case of Stephens v. Cotton Producers Association, D.C., 117 F.Supp. 517, which involves substantially the same issues. For a more complete statement of the facts, reference may be had to the memorandum opinion of the trial court in that case.

neous farm equipment and supplies in the regular and ordinary course of trade. The finding of the trial court that such sales are at retail is not contested. The remainder of Exchange's business is conducted under "Broiler Contract Feeding Agreement(s)", hereinafter referred to as feeder agreements, whereby Exchange purportedly sells baby chicks, feed, and other supplies to its members, hereinafter sometimes referred to as producers, under what is denominated conditional sales contracts. A separate contract is executed for each flock of chicks, and these contracts are recorded on the public records. In connection with its store, Exchange maintains a warehouse for the storage of commodities purchased by it. This facility is directly auxiliary to the operation of the store, as is the delivery service which Exchange performs.

When Exchange determines that a flock of broilers is ready for market, its manager sends a contingent of men to the farm of the producer with instructions to catch and coop the broilers, load them on trucks and transport them to the processing plant where they are sold. This service is optional with the producer. He is at liberty to hire his own employees and deliver the broilers to market in his own conveyance if he wishes. The purchaser of the broilers makes his check payable to Exchange and indicates thereon from which producer the flock is delivered. Exchange then computes the amount due the producer and remits the sum to him.

■■ The plaintiffs were engaged to unload feed, fertilizer, seed and other merchandise, stack it in the warehouse, restack it when necessary, carry purchases out to patrons and load them into their conveyances, deliver feed to producers and to perform similar tasks connected with the operation of the store. They sometimes took orders, but a large part of their time was spent on the farms of the producers catching and cooping broilers and loading them on trucks. Appellants contend that their duties, insofar as they related directly or indirectly to transactions had under the feeder agreements, were not exempt under Secs. 13(a) (1) or 13(a) (2) for the reason that the feeder agreements do not constitute retail sales, thus the local retailing and retail establishment exemptions are not applicable. They argue further that the feeder agreements and transactions had pursuant to them are not sales at all, but are merely bailments locatio operis faciendi. They submit that their duties were not exempt under Sec. 13(a) (6), as employment in agriculture as defined by Sec. 3(f), because in this respect they were limited to merely catching, cooping and loading the broilers on conveyances to be transported to market, and were not engaged in raising the broilers for market.[4]

■■ A great part of the briefs and arguments are devoted to a discussion of the nature of the relationship which arose between Exchange and the producers by virtue of the contracts, with particular reference to whether they were contracts of conditional sale or bailment. While these arguments take wide range, there seems to be general agreement with respect to the salient legal principles. No particular form is required to constitute a conditional sales

4. The further contention is made that poultry is not an agricultural commodity; therefore, the agricultural exemption does not apply. In support of this position, plaintiffs rely upon Stratton v. Farmers Produce Co., 8 Cir., 134 F.2d 825. That case is inapposite since it is concerned with Sec. 13(a) (10) of the Act, having to do with handling, packing, et cetera of agricultural or horticultural commodities for market. The statutory definition of "agriculture", which is applicable here, expressly includes the production of poultry and any practices performed on a farm incident to, or in conjunction with, farming operations, including preparation for market, Sec. 3(f), 29 U.S.C.A. § 203 (f). It is also contended that the agricultural exemption was not intended to apply to "big business" such as is involved here. That contention is adequately answered by N. L. R. B. v. John W. Campbell, Inc., 5 Cir., 159 F.2d 184.

contract.[5] Whenever personal property is sold and delivered with the condition affixed to the sale that the title thereto is to remain in the vendor until the purchase price is paid, such transaction is a conditional sale.[6] A bailment is defined by the Code of Georgia, Sec. 12–101, as "a delivery of goods or property for the execution of a special object, beneficial either to the bailor or bailee, or both; and upon a contract, express or implied, to carry out this object and dispose of the property in conformity with the purpose of the trust." Frequently it is difficult to determine whether a particular agreement is one of conditional sale or one of bailment.[7] In 6 Am.Jur. 197, Bailments, Sec. 35, the editors seek to distinguish them thus:

"A conditional sale contemplates that at some time the title shall pass to the vendee and that at some time and in some manner he shall pay the purchase price; a bailment contemplates that title shall not pass to the bailee, but shall remain in the bailor, and that the property shall be returned to the bailor or disposed of as he shall direct."[8]

Interesting as these questions are, we do not find it necessary to undertake to determine them. This is so because we are of the clear opinion that, whether the relation between defendant and the growers be determined to be that of bailor—bailees, or of seller and buyers under conditional sales contracts, the activities of the plaintiffs are within one or more of the claimed exemptions and the judgment was right and must be affirmed.

Affirmed.

Judge RUSSELL sat during the argument of this case but, due to illness, he took no part in this decision.

---

5. A. O. Blackmar Co. v. Wright Co., 62 Ga. App. 861, 10 S.E.2d 117.

6. Title 67, Sec. 1401, 1933 Code of Georgia; Whitehead v. Cranford, 210 Ga. 257, 78 S.E.2d 797.

7. In McKenzie v. Roper Wholesale Grocery Co., 9 Ga.App. 185, 70 S.E. 981, the court observed that a conditional sale is a species of bailment whereby the vendee unconditionally promises to pay the purchase price and the vendor reserves title in himself until such payment is made.

8. In addition to the cases there cited, see First State Bank of Shannon v. Harter, 301 Ill.App. 234, 22 N.E.2d 393, 395; Ahrens Refrigerator Co. v. R. H. Williams Co., 176 Okl. 5, 54 P.2d 200, 202; Union Stock-Yards & Transit Co. v. Western Land & Cattle Co., 7 Cir., 59 F. 49, 53; In re Sachs, D.C., 21 F.2d 984, 986; Globe Securities Co. v. Gardner Motor Co., 337 Mo. 177, 85 S.W.2d 561, 567; Emerson-Brantingham Implement Co. v. Arrington, 216 Ala. 21, 112 So. 428, 431; Norris v. Boston Music Co., 129 Minn. 198, 151 N.W. 971, 972, and Franklin v. Stoughton Wagon Co., 8 Cir., 168 F. 857, 861.