Robert D. JOHNSTON, Appellant,

v.

COTTON PRODUCERS ASSOCIATION
and The Farmers Mutual Exchange
of Calhoun, Inc., Appellees.

No. 16405.

United States Court of Appeals
Fifth Circuit.

May 24, 1957.

Rehearing Denied June 25, 1957.

John D. Edge, Calhoun, Ga., for appellant.

Daniel B. Hodgson, Atlanta, Ga., Alston, Sibley, Miller, Spann & Shackelford, Atlanta, Ga., of counsel, for appellees.

Before RIVES, JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

In the District Court for the Northern District of Georgia Robert D. Johnston brought an action claiming minimum wages and overtime under the wage and hour provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S. C.A. § 201 et seq., against two incorporated cooperative associations, Cotton Producers Association, here referred to as the Association, and The Farmers Mutual Exchange of Calhoun, Inc., here called the Exchange. The Association furnished credit to the Exchange and had a veto over the selection of a manager of the Exchange. The Association had no other control over the Exchange and it was in no sense a subsidiary of the Association. Johnston was an employee of the Exchange and his work was neither performed for nor directed by the Association. The district court found that Johnston was not an employee of the Associa-

tion. The evidence would not have sustained a contrary finding. The district court properly dismissed the Association as a party defendant.

The Exchange operated, at Calhoun, Georgia, a business which was called by this Court in Nix v. Farmers Mutual Exchange of Calhoun, 5 Cir., 1955, 218 F.2d 642, a rural farm supply store. It was recognized as a retail store in the industry. With the exception of "swaps" of merchandise with other cooperative associations or exchanges, none of the mercantile sales of the appellee Exchange could be regarded as sales for resale. These "swaps" were less than three per cent. of the dollar volume of total sales during the period here involved. In no month were the "swaps" as much as ten per cent. of the total sales. The district court found that the store of the Exchange was a retail establishment, making retail sales, and so recognized in the industry. Such finding was not only supported by substantial evidence but any other finding would have been improper.

Except for the "swaps", some of which were with organizations in Alabama and Tennessee, none of the sales of merchandise by the Exchange were interstate.

Although the evidence is somewhat meager, it appears that the Exchange made sales of baby chicks to its farmer customers under agreements by which the Exchange retained title to the chicks as security for the purchase price and for advances for feed, supplies, or equipment. The Exchange rendered to its customers advisory service in raising chicks to the broiler stage and marketing. As an employee of the Exchange it was Johnston's job to supervise the growing of chicks by growers on their farms, and to catch and coop the ready-for-market chickens and load them on trucks. The chickens, when loaded, were sent to processing plants where they were slaughtered, cleaned, packed and sent to markets. The shipments to markets were sometimes interstate. Johnston did some of his work at the store of the Exchange in maintaining records of the flocks of the growers, receiving instruc-

tions as to the services required by the growers and similar activities. On one occasion, the date of which was not shown, Johnston went to Rome, Georgia, unloaded from a boxcar some fertilizer which had been shipped from Alabama and hauled it to the farm of a customer who had purchased it from the Exchange. In his complaint Johnston alleged that the Exchange was in interstate commerce and that his work was in connection with the interstate business of the Exchange. He claimed he worked ninety hours each week of the period of his employment. In the findings of fact of the district court it was recited that if necessary to do so the court would find that Johnston worked in excess of forty hours a week and when engaged in catching, cooping and loading chickens he worked an average of sixty-five hours a week. He was not paid the minimum wage specified in the Fair Labor Standards Act, as amended, during a portion of the period, nor was he paid any overtime.

The district court found that the Exchange was a retail establishment as defined by Section 13(a) (2) of the Act, 29 U.S.C.A. § 213(a) (2), and hence exempt from its provisions. The isolated instance of hauling a load of fertilizer from the car in which it was shipped from outside the state to a farmer customer was, the district court held, performed for the Exchange in its capacity as a retail business and hence exempt. The activities of Johnston in the catching, cooping and loading of chickens on the growers' farms, the district court held, were within the exemption of agricultural labor from the operation of the Act under Section 13(a) (6), 29 U.S. C.A. § 213(a) (6), and Section 3(f), 29 U.S.C.A. § 203(f).

The provisions of the Act which relate to minimum wages, 29 U.S.C.A. § 206, and to overtime pay for work in excess of maximum hours do not apply with respect to "(1) any employee employed in a bona fide * * * local retailing capacity, * * *; or (2) any employee employed by any retail or service establishment, more than 50 per centum of which

establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located * * * ; or (6) any employee employed in agriculture * * * ". 29 U.S.C.A. § 213(a). "A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." 29 U.S.C.A. § 213 (a) (2). The Administrator of the Wage and Hour Division of the Department of Labor has defined the term "employee employed in a bona fide * * * local retailing capacity" to mean any employee:

"(a) Who customarily and regularly is engaged in:

"(1) Making retail sales of goods or services of which more than 50 per cent. of the dollar volume are made within the State where his place of employment is located, or

"(2) Performing work immediately incidental thereto, such as the wrapping or delivery of packages; and

"(b) Whose hours of work of a nature other than that described in paragraphs (a) (1) or (2) of this section do not exceed 20 per cent. of the hours worked in the workweek by the nonexempt employees of the employer." 29 C.F.R.1957 Supp. 170, § 541.4.

As used in the Act—

" 'Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil, * * * the raising of * * * poultry, and any practices * * * performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market". 29 U.S.C.A. § 203(f).

This Court had before it in Nix v. Farmers Mutual Exchange, 5 Cir., 1955, 218 F.2d 642, a case involving the same employer as in the case now before us and the work of the employees in the Nix case was very little different from that performed by the appellant Johnston. In the Nix case the employees unloaded feed, fertilizer, seed and other merchandise, loaded goods acquired by purchasers from the exchange into their vehicles, delivered feed to poultry producers and performed similar tasks. A large part of their time, but not to the same extent as Johnston, was spent on the farms of poultry growers in catching, cooping and loading chickens so that they might be transported to the plants of processors.

It is, of course, the nature of the employee's work rather than the nature of the employer's business that brings him within or excludes him from the benefits of the Act. A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538. Substantially all of Johnston's work was done as a part of or in connection with the preparation for market and the delivery to market of poultry raised on farms. To the extent that this work was done on farms it was agricultural. Such of it as was done in the place of business of the Exchange was agricultural or in a local retailing capacity. The findings of the district court that the business of the Exchange was a retail establishment and its sales were recognized as retail in the industry were amply sustained by the evidence. The unloading of a part of a car of fertilizer and delivering it to a customer of the Exchange was in connection with and incidental to a retail sale. As was said in Nix v. Farmers Mutual Exchange, supra, so we say here, the activities of the plaintiff are within one or more of the claimed exemptions and the judgment was right and must be affirmed. See Johnston v. Farmers Mutual Exchange, 5 Cir., 1955, 218 F.2d 588; Stephens v. Cotton Producers Association, D.C.N.D.Ga.1953, 117 F.Supp. 517.

Affirmed.