**L. E. TIPTON**

v.

**ASSOCIATED MILK PRO-
DUCERS, INC.**

**Civ. A. No. CA 4–74–48.**

United States District Court,
N. D. Texas,
Fort Worth Division.

July 29, 1975.

Dauphin Whitehead, Arlington, Tex., for plaintiff.

William J. Ruhe, Jr., Dallas, Tex., for defendant.

## MEMORANDUM OPINION

MAHON, District Judge.

This is an action arising under the Fair Labor Standards Act 29 U.S.C. Sec. 201 *et seq.* The case was tried before the Court on May 12–13, 1975, and the Court makes the following findings of fact and conclusions of law. The parties have stipulated sufficient facts to establish the necessary connection with interstate commerce and give this Court jurisdiction.

The defendant, Associated Milk Producers, Inc. (hereinafter A.M.P.I.), is a nationwide cooperative of dairymen engaged in providing services to dairymen to aid in the production and marketing of milk. It sells, installs, and repairs the equipment necessary to obtain, cool, and store milk. The Fort Worth Division of A.M.P.I. is composed of approximately 625 farms located principally in the north central Texas area.

The plaintiff L. E. Tipton, was employed by A.M.P.I. from December 7, 1970, through June 14, 1972.[1] His primary duties were to install and repair the refrigeration equipment used by the dairy farmers to cool and preserve their milk in connection with its preparation for market. The installation and service of the equipment was usually performed on the farms of the dairymen who purchased the equipment. When service work was required at a particular farm the plaintiff would either be called at home by his supervisor and told to report directly to that farm the next day, or he would be sent to the farm after arriving at work. The defendant furnished the plaintiff a truck and the tools necessary to install and repair the equipment.

Every other weekend the plaintiff was "on-call". He was required to be available on short notice to travel to any farm in the district to make emergency repairs. Tipton was not required to remain at home at all times while on call, however, but was afforded freedom of movement by merely leaving a telephone number where he might be reached with his supervisor, or by periodically checking in with his supervisor by telephone.

[1]. The parties have stipulated, however, that the statute of limitations precludes any recovery for overtime wages prior to February 20, 1972.

The defendant stipulated that the plaintiff worked more than forty hours in certain weeks. It claims, however, that the plaintiff was exempt from overtime payments because he was an agricultural employee. It further claims that if he is not exempt that the number of overtime hours was minimal and that the plaintiff improperly included his on-call time and the time spent in transit to and from work in calculating his overtime hours.

The initial issue presented is whether the plaintiff was exempt from the requirement of an overtime premium because he was an employee engaged in agriculture under 29 U.S.C. § 213(b)(12). The term agriculture, as defined in 29 U.S.C. § 203(f), has two distinct meanings. First, agriculture is defined as including farming in all its branches, and among other things includes dairying. Dairying is defined in 29 C.F.R. 780.111 as including putting milk in containers, cooling it, and storing it where done on the farm. Second, agriculture is defined as including any practices performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market. Preparation for market includes the separating, cooling, packing, and storing of dairy products. 29 C.F.R. 780.151.

■ The defendant argues on page eight of its memorandum brief that the Court should find that it is a farmer, and engaged in an integrated farming operation. Although it is unclear whether the defendant contends that it is engaged in farming within the primary meaning of the term agriculture, whether it is a farmer within the secondary meaning of that term, or both, the Court finds that sufficient evidence was not produced to exempt the defendant as engaged in farming. No evidence was produced to suggest that the defendant put milk in containers, cooled it, or stored it on the farm. The only evidence introduced revealed that the defendant sold equipment to aid in obtaining, cooling, and storing milk, repaired that equipment, and promoted nationwide marketing operations. The Court is of the opinion that these activities are separately organized as an independent productive activity and not included in farming in all its branches.[2]

■ The defendant also contends that it should be exempted from payment of an overtime premium because it is within the secondary meaning of agriculture. 29 U.S.C. § 203(f). To come within this definition the defendant must prove its operations were performed by a farmer or on a farm as an incident to or in conjunction with such farming operations. An employer who qualifies as a farmer is exempt from the overtime premium requirements of the Fair Labor Standards Act.

The defendant argues that *Wirtz v. Tyson's Poultry, Inc.*, 355 F.2d 255 (8th Cir. 1966), provides ample foundation to find that it is a farmer.[3] In *Tyson Poultry, supra,* the Court felt compelled to factually distinguish a number of very similar cases. In comparing *Mitchell v. Huntsville Wholesale Nurseries, Inc.,* 267 F.2d 286 (5th Cir. 1959), Judge Vogal, at 259–60, looked to factors such as (1) who suffered the loss if production decreased, (2) whether the growers (dairymen) were agents or employees of the defendant, (3) who supplied the feed and medication, (4) the geographic distance involved, (5) whether the defendant purchased the goods (milk) or owned it from the beginning, and (6) whether the defendant owned the soil, chickens, or cows which produced the products being sold. Although little evidence was produced on

---

2. *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672 (1949); 29 C.F.R. 780.104.

3. Again the defendant's brief (p. 8) is unclear whether it is claiming to be a farmer or engaged in farming and therefore the Court will consider both contentions.

these factors the Court finds that *Tyson's Poultry, supra,* is factually distinguishable and not controlling. In the case at bar the farmers, not the defendants, owned the cows, and they suffered the loss if production decreased. Further, there is no evidence that the dairymen were the agents of the defendants.

■ Although it is possible that some farmers cooperatives may themselves engage in sufficient farming operations to an extent and under such circumstances sufficient to qualify as a farmer,[4] the defendant has not proved those circumstances in this case. Without such proof the Court must rely on the legislative history of the Act which reveals the significance of the omission of any express language relating to cooperatives since many unsuccessful attempts were made on the floor of Congress to secure special treatment for them.[5] The courts have held that in the absence of special circumstances that farmers' cooperative associations are distinct from the farmers who own or compose them and the work performed by an association is not work performed by a farmer but for farmers.[6]

The defendant strongly urges that even if it is not within the primary definition of farming in all its branches, or within the secondary meaning of agriculture by performing work as a farmer, that the plaintiff at least performed work on a farm as an incident to or in conjunction with farming operations conducted on that farm. 29 U.S.C. § 203(f). I agree. To come within this secondary meaning of agriculture a practice must be performed (1) on a farm; (2) either in connection with the farmer's own farming operations or in connection with farming operations conducted on the farm where the practice is performed; and (3) the practice must be performed as an incident to or in conjunction with the farming operations.[7]

The initial requirement is that the practice must be performed on a farm. A farm is defined as a tract of land devoted to actual farming activities.[8] The testimony in this case revealed that the plaintiff installed and serviced refrigeration equipment to cool and store milk on the farm. The plaintiff's supervisor, Mr. Holbrook, testified that the plaintiff was probably more involved in installation rather than repair. Installation of the equipment necessarily occurs on the farm where the machinery is to be used. The Court additionally finds from the evidence presented that the service work occurred primarily on the farm. There was some testimony that the plaintiff occasionally worked in the plant of the defendant, but the Court finds that such work was a minor and incidental part of the work performed by the plaintiff.

■■ The practice must also be performed either in connection with the farmer's own farming operations or in connection with farming operations on the farm where the practice is performed. The activities must be performed in connection with farming, as opposed to nonfarming, operations and in connection with the same farmer who performs the practices and not in connection with farming operations that are not his own.[9] Thus an employee is employed in agriculture even though his employer is a commercial industry and big business,[10] and even though he may work on several farms during a work week if his work on each farm pertains solely to the farming operations on that farm.[11] In the case at bar the work performed by the plaintiff was on the

---

4. 29 CFR 780.133b.

5. Note 2, *supra* at p. 769, n. 19.

6. *Id.*

7. 29 C.F.R. 780.129.

8. 29 C.F.R. 780.135.

9. *Mitchell v. Hunt,* 263 F.2d 913, 918 (5th Cir. 1969) ; 29 C.F.R. 780.137.

10. *Nix v. Farmers Mutual Exchange of Calhoun, Inc.,* 218 F.2d 642, 644 (5th Cir. 1955).

11. 29 C.F.R. 780.136.

equipment owned by the dairymen and used to cool and store the milk produced on his farm. Thus, the plaintiff's employment was in connection with farming operations conducted on the farm where he worked.

The final requirement necessary to come within the agricultural exemption is that the practice is performed as an incident to or in conjunction with such farming operations.[12] Preparation for market is one of the practices included in agriculture,[13] and the separating, cooling, packing and storing of dairy products is specifically enumerated as a practice in preparation for market.[14] The evidence revealed that the plaintiff's activities were performed on the farm as an incident to and in connection with the activities of the farmer in cooling and storing the milk. The installation and repair of refrigeration equipment is necessary to the cooling and storing of milk.[15]

The exemption appears to include most activities traditionally performed by the farmer.[16] Historically farmers not only repaired but also made their own equipment and tools. This has led courts to exempt activities such as repair of tools and equipment by employees of a farmer even though the activities occur in a shop rather than on a farm.[17] Further, the same reasoning has led courts to extend the policy to employees of independent contractors such as the defendant. In *Holtville Alfalfa Mills v. Wyatt,* 230 F.2d 398 (9th Cir. 1955), the Ninth Circuit examined a situation very similar to the case *sub judice.* In *Holtville* the defendant corporation neither owned nor operated any farms but harvested the alfalfa crops on various farms through its employees, transported the alfalfa to its plant, and there processed and placed it on the market. That court was called upon to determine if the agricultural exemption applied to several groups of employees including a maintenance man. After finding that the maintenance employee spent the great bulk of his time in the fields repairing the machines used in the harvesting operation the Court found that "these circumstances are sufficient to characterize him as a worker employed in agriculture." [18]

More recently, the Fifth Circuit held in *Boyls v. Wertz,* 352 F.2d 63 (5th Cir. 1965) that a pilot and flagman employed by a crop dusting service on the farms where the dusting occurred were exempt from the provisions of the Act. Those employees were clearly not farmers and the only basis for their exemption was that they were employed on a farm in connection with the farming activities that occurred on the farm.

■ The Court finds and concludes that based upon the facts and circumstances of this case that the plaintiff was employed on farms in connection with farming operations conducted on the farm and as an incident to and in conjunction with the farming operations conducted on those farms. The plaintiff is therefore exempt as a worker engaged in agriculture from the overtime premium provisions of the Fair Labor Standards Act.

It is ordered that the plaintiff take nothing, each side to bear its own costs.

---

12. 29 U.S.C. 203(f) ; 29 C.F.R. 780.129.

13. 29 U.S.C. 203(f) ; 29 C.F.R. 780.150.

14. 29 C.F.R. 780.151.

15. *Maneja v. Waialua Agricultural Co., Ltd.,* 349 U.S. 254, 263, 75 S.Ct. 719, 99 L.Ed. 1040 (1955).

16. *See* Note 2, *supra* at 769.

17. Note 15, *supra*; 29 C.F.R. 780.158.

18. The opinion in *Holtville* is unclear whether the Court holds the employer is engaged in farming, is a farmer, or the employee is employed on a farm. While the circumstances at bar make this case clearly distinguishable from *Holtville*, it is believed that the rationale reflected and the approach taken therein are somewhat supportive of this Court's actions.